EMPORIA LUMBER COMPANY V. HENRY TUCKER.

No. 2087.  Decided November 9, 1910.

**Limitation—Landlord and Tenant—Parol Sale—Case Stated.**

One owning a tract of 1107 acres of land placed another in possession and control of the entire body under a parol agreement that the latter should be entitled to receive a home, of undefined  acreage, out of the tract in consideration of such service.  Held, that such contract created the relation of landlord and tenant between them; that the latter could not claim limitation by virtue of his possession without notice to the landlord of the repudiation of his tenancy; nor could he treat the agreement as a parol sale of the home tract selected by him while repudiating the tenancy which was the consideration of ·such agreement; that his attempted sale by parol of 160 acres claimed by him, under such agreement with the owner, to another having knowledge of the terms of his possession, would not set limitation running against the landlord, without notice to him of the termination of the tenancy and the fact of hostile holding.

Error to the Court of Civil Appeals for the First District in an appeal from Tyler County.

The Emporia Lumber Company, whose vendee, the Thompson Lumber Company, was afterwards substituted as plaintiff, sued Tucker and wife for the recovery of land, and appealed from a judgment by which it recovered one-half only of the land in controversy.  On affirmance, appellant obtained writ of error.

*Mooney & Mann,* for plaintiff in error.—One who verbally contracts to purchase land from the owner whose title is absolute, and who goes into possession under such verbal contract, ' becomes a tenant at the sufferance of him who holds the title, and his possession until he receives a written conveyance is that of the vendor.  Bowles v. Brice, 66 Texas, 728; Morris v. Meek, 57 Texas, 385; Neyland v. Texas Yellow Pine Lumber Co., 26 Texas Civ. App., 417; Ourey v. Saunders, 77 Texas, 278; Cook v. Coleman, 33 S. W., 756.

A tenant in possession will not be permitted under the law to do any act in violation of the duty he owes his landlord, until he repudiates such tenancy and gives his landlord notice of such repudiation. Forrest v. Durnell, 86 Texas, 651.

Hyde, his heirs and assigns, the true owners of said land, being in possession of said 1107 acres by and through their tenants Cobb and Oates, defendants would, if entitled to recover any portion thereof, be restricted in their recovery to the lands they had actually enclosed.  Watkins v. Smith, 91 Texas, 592; Evitts v. Roth, 61 Texas, 84; Chandler v. Rushing, 38 Texas, 596.

For a naked trespasser to recover a specific 160 acres out of a large tract of land by adverse possession under the ten years statute of limitation, he must show that the 160 acres which he seeks to recover has been segregated from the balance of the tract of which it is a part, by well marked lines for a period of ten years before the institution of the suit.  Rice, Executor, v. Goolsbee, 45 Texas Civ. App., 354; Titel v. Garland, 99 Texas, 201.

A tenant is not under the law permitted to repudiate his tenancy

without first bringing to notice of his landlord such repudiation. Udell v. Peak, 70 Texas, 551.

Cobb and wife, who went upon the land of Hyde under a verbal contract with Hyde that they, Cobb and wife, could have a portion of the tract of land, which portion had never been agreed upon or designated by metes and bounds, would not be permitted, after Hyde's death, without the knowledge or consent of Hyde's heirs and assigns, to convey any specific tract of land from said large tract, which they entered upon to hold for Hyde. Fowler v. Simpson, 79 Texas, 618; Flanagan v. Pearson, 61 Texas, 302.

*Jos. W. Thomas,* for defendant in error.—The evidence did not raise any issue of tenancy at sufferance in those who had such possession of the 1107 acres, so as to preclude defendants' occupancy from maturing title to the 80 acres recovered. E. E. Oates bought in 1891 from Ben Cobb and wife, who had elected to purchase 160 acres, and the said Oates was not a tenant, though he was told by Cobb the agreement between Cobb and Hyde; therefore special charges requested by plaintiff on the issue of such tenancy were properly refused, and the evidence showing the true facts was correctly admitted. Read v. Allen, 63 Texas, 158; Craig v. Cartwright, 65 Texas, 424; Hall v. Clountz, 26 Texas Civ. App., 348; Texas Land Co. v. Williams, 51 Texas, 61.

Appellees claimed a specific 160 acre tract that is described in their pleadings, and their possession was sufficient notice of the extent and location of their claim and the land appropriated by them. Davis v. Receivers Houston Oil Co., 50 Texas Civ. App., 597.

(From motion for rehearing.) This court erred in holding Oates to be a tenant, in that he purchased from Cobb in 1890, which together with no evidence to the contrary leads to the presumption that the time of the tenancy had expired, or that the tenancy had been repudiated, for a sale may be sufficient to repudiate such an agreement. Watkins v. Edwards, 23 Texas, 449; Mullins v. Wimberly, 50 Texas, 465-466; Eylar v. Eylar, 60 Texas, 319-320; Thomson v. Weisman, 98 Texas, 170; Ramirez v. Smith, 94 Texas, 184.

Mr. Justice Brown delivered the opinion of the court.

We copy from the opinion of the Court of Civil Appeals as follows:

"The Emporia Lumber Company, on July 29, 1906, filed this suit against Henry Tucker and wife for the title and possession of 1107 acres of land, part of the J. J. Blackman league in Tyler County. Thompson Bros. Lumber Company having subsequently acquired the title of the Emporia Lumber Company, intervened, and was substituted as party plaintiff.

"Defendants disclaimed title to all the tract save as to 160 acres, described in their answer, and as to which they pleaded the statute of limitations of ten years. Upon the filing of the disclaimer judgment was rendered in favor of plaintiff for all the land except the 160 acres described in defendants' plea. Plaintiff, by supplemental petition, set up coverture of two married women, who, it was al-

leged, owned an undivided half interest in the land, and whose title had passed to plaintiff. The case was tried before a jury and a verdict was returned in favor of plaintiff for an undivided half interest, and in favor of defendants for an undivided half interest in the 160 acres in controversy, upon which verdict a judgment was duly entered. The plaintiff has appealed. . . .

"The testimony on this issue, briefly, was as follows: In 1888 Ben Cobb and his wife had an agreement with W. T. Hyde, the then owner, by which it was agreed that Cobb and wife should move onto the 1107 acre tract, and that they might have for their own so much thereof in the northern part as they desired for a home, the only consideration being that Cobb should look after the 1107 acres. Acting under this agreement Cobb and wife moved onto the land in the early part of 1888, built a house, in which they lived, and cleared and fenced about 15 acres of land, which they cultivated, and they continued to reside upon and cultivate the inclosed land during the years 1888, 1889 and 1890. In the latter part of 1890, Cobb and wife having previously elected to take for their home 160 acres of the 1107 acre tract, including their improvements, verbally sold this quantity, including the improvements, to E. E. Oates, who immediately took possession and has continuously held possession down to the time of the trial. At the time of the sale to Oates, Cobb explained to him the conditions under which he acquired the land which he held. Hyde died soon after Cobb went into possession and Cobb died before the trial. Both Mrs. Cobb and Oates testified that during the time they respectively held possession of the land claimed by them they had no actual possession of any other part of the 1107 acres, nor did they claim the same for Hyde or his heirs or assigns, but that they only claimed and held the part acquired by Cobb from Hyde in the manner detailed. Cobb and wife executed no deed to Oats at the time the latter purchased, and the 160 acres claimed by them was not surveyed and its boundaries defined until the year 1900, at which time Cobb and wife executed a deed conveying to Oats the 160 acres they claimed to have acquired from Hyde."

The facts found by the Honorable Court of Civil Appeals show that Cobb and wife were tenants of Hyde during his lifetime and that they sustained the same relation to his heirs after his death. Hyde owned 1107 acres of land in a body and he made a proposition to Cobb and wife that if they would look after his land he would let them have enough for a home on the North portion of the tract. In pursuance of this proposition they went into possession of the land, building a house and opening up a field of about fifteen acres near the North line. Hyde died soon after this occurred but never executed any written agreement embracing the contract. Cobb and wife were in possession of the whole tract of 1107 acres and held that possession by virtue of the title of Hyde, therefore, they were the tenants of Hyde. According to the facts found by the Court of Civil Appeals, Cobb and wife took no steps to designate any land that they claimed during the time of their possession, but in the year 1900 the land was surveyed, embracing the land in controversy, and

a deed made by Cobb and wife to Oats, which deed was made in pursuance of a parol sale by Cobb and wife to Oats, made in about the year 1890. Under this state of facts Cobb and wife were the tenants of Hyde and after his death continued to be the tenants of his heirs, and their parol sale to Oats, in which they fully explained the character of their agreement, placed him in the same relation towards the owner of the land that Cobb and wife sustained. The facts show no act done either by Cobb and wife or Oats prior to 1900 that would give notice to either Hyde or to his heirs that they had repudiated the contract under which Cobb and wife entered upon the land. It is said in the findings of fact that both Cobb and wife and Oats testified that they never had· actual possession of any of the land except the 160 acres, but the statement of facts showed that they lived upon the 1107 acres under a contract to control the whole. It is said that each of them testified that he did not take any control of the tract of land and did not look after it. This would have been a strange proposition upon which to base title under an executory parol contract to sell land. If it be considered as a sale of the land, then it, being in parol, would be void unless it be shown that the parties went into possession and paid the consideration. But the court in this case seems to hold that although Cobb and wife repudiated the part of the contract which constituted the consideration for the sale, they could claim the right to hold the land under the parol agreement. This certainly can not be the law of this State. Oats can not defend his possession under the parol contract and at the same time repudiate the service upon which it was based. The deed from Cobb and wife to Oats conveyed no more than did their parol sale, which was made to Oats in 1890. To re-state our conclusion, it is, that if the contract was a parol sale, then the consideration not having been performed, and it not being in writing, the contract can not be enforced and conferred no title upon the parties who refused to perform the conditions upon which the contract rested. If, as we hold, the transaction and the relation between Cobb and wife and Hyde and his heirs and between Oats and the heirs of Hyde was that of landlord and tenant, then the claim of title by Oats can not be sustained, because there is no fact to show that the tenancy was ever repudiated in such manner as to give notice to the owners of the land that the deed was made and the land surveyed. There is no evidence that there was any change in the possession of Oats after the deed was made, or anything done by him which would indicate to the owners of the land that he was claiming title thereto. The undisputed evidence shows that the deed from Cobb and wife to Oats was not recorded five years before the institution of this suit, therefore, limitation of five years did not accrue if notice was thereby given of the adverse claim. But we do not mean to say that if this had been done it would have been sufficient notice to the owners of the land of a repudiation of the tenancy by Oats.

The case seems to be fully developed, the evidence shows no right in Oats, and there is no necessity for sending it back for another trial. It is therefore ordered that the judgments of the District Court

and Court of Civil Appeals be reversed and that judgment be here rendered that the Thompson Lumber Company have and recover of the defendants Henry Tucker and Frances Tucker, the land in controversy.

*Reversed and rendered.*