# J. A. KILLOUGH ET AL v. CLEM HINDS ET UX

No. A-7756. Decided October 5, 1960.
(338 S.W. 2d Series 707)

*Sanders, Scott, Saunders, Brian & Humphrey* and *Thomas F. Saunders*, all of Amarillo, for petitioners.

*White & White, Lawing & Hazlett* and *Rosa J. White*, all of Borger, for respondents.

MR. JUSTICE CULVER delivered the opinion of the Court.

Petitioners, Killough et al., sued respondents, Clem Hinds and wife, in trespass to eject and oust them from possession of that part of the west half of Section 14, Block Y, M. & C. Surveys in Hutchinson County lying south of State Highway 152. Hinds and wife answered claiming that portion of the northwest quarter of the southwest quarter of Section 14 lying south of State Highway 152 and impleaded Lanhom Development Corporation, claiming also that portion of the northwest quarter of the southwest quarter of Section 14 lying north of State Highway 152. The claim asserted by Hinds and wife to both tracts was by way of adverse possession under the 10-year statute of limitations. We are concerned here only with the title to the surface, the minerals having been severed.

It was judicially admitted that Killough and Lanhom held record title to the land subject only to the Hinds claim of adverse possession. The trial court entered summary judgment in favor of both Lanhom and the Killoughs. The Court of Civil Appeals affirmed as to Lanhom, but reversed and remanded the judgment in favor of Killough holding a question of fact to have been raised in the controversy between him and Hinds as to that portion of the 40 acres lying south of Highway 152. 332 S.W. 2d 101. As we view the case the summary judgment was proper.

Both parties filed applications for writs of error. The Hinds application complaining of the affirmance of the summary judgment in favor of Lanhom was refused no reversible error, while that of Killough was granted.

The evidence discloses that Hinds acquired an oil and gas lease on the 40 acres and in 1930 constructed a house upon the property with the separate funds of his wife where they have continued to reside up to the time of the filing of this suit.

In another and prior suit brought by Mrs. Hinds and her husband against other parties involving title to the leasehold

estate Mrs. Hinds in 1940 in her sworn petition alleged "this plaintiff (Mrs. Hinds) would show that she has due and legal and proper authority from the owner of the surface rights, authorizing her to keep said house in its present location upon said land, and that her residence being located aforesaid, is not with the authority of sufferance of the owner of the leasehold estate, nor upon his authority but is upon a right granted by the owner of the surface rights, and is for a valuable consideration moving from this plaintiff to the said owner of the surface rights."

The occupancy in the first place having been permissive, the question in this case narrows to whether or not any actual or constructive notice of repudiation of their permissive user of the surface of the land in question was ever brought home to the record owners of the surface estate or to their predecessors in title.

■ It appears that production of oil and gas has been obtained and the lease is still valid and subsisting. Drilling operations were continued from time to time and there are now three producing wells on the premises. About 1949 Hinds failed to complete a well as a producer and thereafter sold the lease. Since that time he has been employed by his vendee as a pumper. The mere fact that his relationship to the property was changed from that of a leaseholder to an employee of the leaseholder is not material or particularly relevant. The law is well settled that even if a tenant remains in possession after the expiration of his term without an express repudiation of his tenancy that is not sufficient to show an adverse possession to his landlord even though he may secretly so intend. Overstreet v. Houston Oil Co., Texas Civ. App., 64 S.W. 2d 354, wr. ref.

Hinds and his wife testified by deposition. He admittedly never made any claim of ownership to the record owners. At one point in his deposition he admits that he went on the property at first in 1930 as the owners of the oil and gas lease and that some time later he claimed to own the surface rights but he was not real sure as to when he first made that claim. At another place it is indicated probably that he began to claim title to the surface shortly after the 1939 suit between him and the one from whom he purchased the oil and gas lease originally. The Court of Civil Appeals holds that an adverse claim could not have been made prior to 1943 by reason of the fact that the grazing of cattle by Killough and others on the land kept the claim from being exclusive.

The land was never fenced except for a small garden tract which was on that part of the 40 acres north of the highway. In his reply to the application for writ of error respondent, Hinds, summarized the evidence relied upon to show repudiation and adverse possession. We quote as follows:

"Respondent entered the land 1930 under an oil and gas lease which he repudiated some time prior to 1940 and about that time claimed the land as their own. That the oil lease was the same limits as their claim. That the part of the 40 in controversy here was used to build their home on, and they also had a barn on it down from the house where they kept the livestock, and a chicken coop, a building about 10 by 12 with a fence around it which they had until 1958 a month or so before making the deposition in question. That Respondents also had a hog pen on the property in question from about 1942 or 1943 for a couple of years. That the Hinds also sold junk iron and junk off the said property for several years. That the cattle or cows of the Respondents were pastured up till 1942 or 1943 across the highway on the north part of the property and that on such north side the Hinds were troubled with trespassers, or other persons grazing, due to the terrain.

"That Respondents also exerted ownership over the land in question by allowing tenants to use it for various considerations, the Wagonwheel is discussed in Petitioners application, Megert Sand and Gravel Co. was also a tenant of Hinds operating on the land from some ten years from 1945 to 1956 and moved sand or gravel off the land. That Hinds drilled a water well on this property for the said Company and supplied with water for monthly rentals.

"Hinds also had another tenant Tom Dowdy who he allowed to build a house on the land, in return for his help with livestock and the garden. That Dowdy lived on such land in such fashion from 1938 till he died in 1946."

The "Wagonwheel" mentioned above was a small cafe or roadhouse located on the 40 acres south of the highway. It was installed in 1935. The Court of Civil Appeals says in its opinion on rehearing "We believe Clem Hinds' deposition raises an inference, if it does not actually show conclusively, that Hinds claimed the Wagonwheel was placed on the land with his consent and used in subordination to his claim." We do not agree with this conclusion. In the first place this happened long before the time that Hinds says he laid any claim to the property. While

he does say that he gave permission, he admits that the record owners of the land called him into Amarillo and asked if. he had any objection to the little cafe being placed on the property and he replied that he had none. He did not ever attempt to charge or collect any rent. Under the circumstances we do not think this either evidenced any adverse possession or constituted any constructive notice to the record owner of any such claim.

Hinds had a small enclosed garden but that was on the property north of the highway, the title to which has been decided adversely to Hinds in this case. He testified that he drilled a well on the property south of the road and pumped the water across the highway to his garden. He also sold water from this well to Megert Gravel Company who were taking gravel north of the highway. Since the gravel and truck garden operations were on land not in controversy between Killough and Hinds we fail to see how that fact would constitute any adverse possession or notice of repudiation so far as that part of the land south of the highway is concerned. Hinds does say that in 1956 Megert took some gravel from the south part of the 40 acres but that he made no charge except for the water he furnished. Hinds also told of allowing an elderly man, who had no other place to live, to build a house on the south side of the road and charged him $10.00 a year. This man worked Hinds garden for the rent. He was there from about 1938 to 1946.

We believe that none of these facts, including the erection of the barn, pig pen, chicken house and the grazing of milk cows, all of which were relied on to show adverse possession were at all inconsistent with the permissive use and the right by which Hinds entered upon and occupied the property and built his residence, nor are they sufficient as a matter of law to afford the record owner constructive notice of a repudiation of that permissive use.

■ There are affidavits in the transcript to the effect that Hinds had stated to affiants that he owned the property, but no showing that these statements had ever been communicated to the record owners. In our opinion if this were the extent of the testimony on a trial of the case, an instructed verdict in favor of the record owners would have been proper. This is the test as to whether a summary judgment should have been granted. Fowler v. Texas Employers' Ins. Ass'n., Texas Civ. App., 237 S.W. 2d 373, wr. ref.

■ The rule is thus stated in Davis v. Lund, 41 S.W. 2d 57

(Comm. App.) : When A enters upon the land in recognition of the title of B, in order for A to prevail under the 10-year statute of limitations three things must be established, (1) there must be a repudiation of the relationship thus established and claim of title adversely to that of B; (2) this repudiation and adverse claim must be clearly brought home to B as limitation will only begin to run from that date; (3) there must be adverse possession for 10 years after notice of repudiation and adverse claim has been brought home to B.

In Mhoon v. Cain, 77 Texas 316, 14 S.W. 24, this Court said:

"* * * Having once held in subordination and recognition of the real title, he could not make it a hostile holding without a repudiation of the title, evidenced by acts or declarations clearly manifesting that intention. * * *."

In Evans v. Templeton, 69 Texas 375, 6 S.W. 843, there is discussed the character of evidence necessary to show constructive notice of repudiation to the record owner. The Court there laid down the following rule:

"* * * In order to make the plea of limitation effectual in such case, he must show some notorious act of ownership over the property, distinctly hostile to the claim of the grantee; and the adverse possession after this must continue for a sufficient length of time before suit to complete the statutory bar. The 'possession must not only be actual, but also visible, continuous, notorious, distinct and hostile, and of such a character as to indicate unmistakably an assertion of claim of exclusive ownership in the occupant.' "

Measured by the test laid down in the foregoing cases, the evidence falls short of raising a fact issue.

Mere occupancy of land without the intention to appropriate it will not support the statute of limitation even though the occupant did not enter as a matter of right. Wright v. Vernon Compress Co., 156 Texas 474, 296 S.W. 2d 517.

Actually all that the deposition of Hinds shows here is that he and his family occupied and resided upon the premises with those uses and privileges that are customary and incidental to family occupancy.

In this case it is somewhat doubtful as to when the claim of

ownership of the land by adverse possession was first asserted, but that is more or less immaterial because limitation would not begin to run until the owners had either actual or constructive notice of repudiation and since in our opinion the evidence does not raise a fact question in that respect, the trial court correctly granted summary judgment for the petitioner.

The judgment of the Court of Civil Appeals is therefore reversed and that of the trial court affirmed.

Opinion delivered October 5, 1960.