Thomas CLEVELAND, Appellant,

v.

Joyce HENSLEY, Appellee.

No. 8414.

Court of Civil Appeals of Texas, Texarkana.

March 8, 1977.

Hollie G. McClain, Gilmer, for appellant.

Alvin N. Flynn, Charles H. Clark, Tyler, for appellee.

CORNELIUS, Justice.

Mrs. Joyce Hensley, appellee, filed this trespass to try title suit against appellant, Thomas Cleveland, to recover title to approximately two acres of land in Big Sandy, Texas. She claimed title through Sallie Turner whom she alleged had perfected title to the land by adverse possession. Appellant Cleveland was the holder of the record title. He succeeded to the title of his grandfather, Albert Cleveland, who purchased the land in 1887. After a jury trial appellee was awarded judgment.

Some of the Cleveland family lived in a house on the land in question until about 1921. Some time after 1921, but before 1932, the house came to be occupied by Mrs. Sallie Turner. She resided on the property until about 1962. She made some repairs on the house, had water and electricity installed, maintained the fence and kept a garden. She died in 1962. Without identi-

fying any specific property, Mrs. Turner's will devised all of her property to her brother, Rice Price, Jr. In settlement of a debt owed by Mrs. Turner, Rice Price, Jr. conveyed to Dr. Henry Hensley whatever interest Mrs. Turner had in the property in question. Dr Hensley died in 1963 and his property was devised to his wife, the appellee. When appellant, who was then a resident of Minnesota, discovered in 1963 that appellee was claiming the land, he wrote her, identified himself as a descendant of the original owner and requested the opportunity to buy the property. His offer was refused. Appellant then consulted with his attorney and was advised that record title was still in the Cleveland heirs. He acquired the interests of the other heirs, took possession, razed the old house and located his mobile home on the property. Appellee then filed suit.

In answer to special issues, the jury found that (1) appellee and those under whom she claimed held peaceable and adverse possession of the land for more than ten years prior to Mrs. Turner's death in 1962, (2) Mrs. Turner and her husband entered into possession of the land pursuant to a landlord-tenant agreement with the Clevelands, (3) Mrs. Turner and her husband repudiated the landlord-tenant agreement and claimed adversely to the Clevelands, (4) the possession of Mrs. Turner was of such unequivocal notoriety that the appellant would be presumed to have notice of such adverse claim and possession, (5) appellant knew or should have known that Mrs. Turner was claiming the land adversely to him or his predecessors in title, and (6) the Clevelands had not held adverse possession of the property. Upon these answers the trial court concluded that Mrs. Turner had matured title to the land in question by adverse possession under the provisions of Article 5510, Tex.Rev.Civ.Stat.Ann., and

awarded title and possession to appellee as her successor in title.

Appellant assigns seven points of error. The first six generally assert there is no evidence or insufficient evidence to support the jury's findings that Mrs. Turner repudiated the landlord-tenant relationship and possessed the land under a claim of right which was adverse to the Clevelands. The seventh point complains of the exclusion of a portion of the testimony of Mrs. Locust relating to statements made by Mrs. Turner concerning the nature of her possession.

■ As previously noted, the jury found that when Mrs. Turner entered into possession of the land she did so as the tenant of the Clevelands. Appellee does not attack that finding and it has ample support in the evidence. Testimony was admitted that Mrs. Turner took possession of the property to "keep it up" and look after it for the Clevelands. It is not necessary that there be a rental arrangement for a landlord-tenant relationship to exist for the purposes of the adverse possession statutes. It is sufficient if the owner consents to the occupancy thereof and the occupant holds in recognition or subordination to the title of the owner. *Emporia Lumber Co. v. Tucker,* Tex.Civ.App., 120 S.W. 1082, rev. 103 Tex. 547, 131 S.W. 408 (1910); 35 Tex.Jur.2d, Landlord and Tenant, Sec. 1, p. 484.

■ The law exacts from a tenant the utmost good faith in carrying out his agreement of tenancy. *Houk v. Kirby Petroleum Co.,* 65 S.W.2d 496 (Tex.Comm.App.1933, judgmt. adopted). Once the landlord-tenant relationship is established, possession of the tenant will not be considered adverse to the owner as required by Articles 5510 and 5515 [1] unless and until (1) there is a repudiation of the relationship and the assertion of a claim of right adverse to the owner, and (2) notice of such repudiation and ad-

---

1. "Art. 5510. Any person who has the right of action for the recovery of lands, tenements or hereditaments against another having peaceable and *adverse* possession thereof, cultivating, using or enjoying the same, shall institute his suit therefor within ten years next after his cause of action shall have accrued, and not afterward. . . ." (Emphasis supplied.)

"Art. 5515. 'Adverse possession' is an actual and visible appropriation of the land, commenced and continued under a *claim of right inconsistent with and hostile to the claim of another.*" (Emphasis supplied.)

verse claim is given to the owner. *Killough v. Hinds,* 161 Tex. 178, 338 S.W.2d 707 (1960); *Houk v. Kirby Petroleum Co.,* supra; *Davis v. Lund,* 41 S.W.2d 57 (Tex. Comm.App.1931, holding approved); *Doherty v. Jensen,* 174 S.W.2d 77 (Tex.Civ.App. Galveston 1943), rev'd in part, aff'd in part, 143 Tex. 64, 183 S.W.2d 453 (Tex.1944). If the rule were otherwise, it would be extremely hazardous for an owner to enter into any landlord-tenant relationship. *Udell v. Peak,* 70 Tex. 547, 7 S.W. 786 (1888); *Keels v. Keels,* 427 S.W.2d 913 (Tex. Civ.App. Tyler 1968, no writ). Notice of repudiation may be constructive, or as is sometimes said, may be proved by circumstantial evidence. *Brown v. Bickford,* 237 S.W.2d 763 (Tex.Civ.App. San Antonio 1951, writ ref'd n. r. e.). That is, even though there is no proof of actual notice the jury may infer that notice of repudiation has been brought home to the owner where there has been (1) long continued possession under claim of ownership and (2) non-assertion of claim by the true owner. *Tex-Wis Company v. Johnson,* 534 S.W.2d 895 (Tex. 1976); *Dominy v. Dominy,* 305 S.W.2d 389 (Tex.Civ.App. Houston 1957, no writ); *Killough v. Hinds,* supra; *Mauritz v. Thatcher,* 140 S.W.2d 303 (Tex.Civ.App. Galveston 1940, writ ref'd). Notice of a claim of ownership on the part of the tenant which indicates that the landlord-tenant relationship has been repudiated may also be inferred from acts of the tenant which ordinarily would be expected of only an owner and which are inconsistent with the existence of the landlord-tenant relationship. *Killough v. Hinds,* supra; *Houston Oil Co. of Texas v. Stepney,* 187 S.W. 1078 (Tex. Civ.App. Beaumont 1916, writ ref'd). But there must be external circumstances disclosing the inward intent to claim the land adversely to the owner, for it is not the function of constructive notice to avoid the effects of actual notice, but rather to bring home to the owner knowledge of the assertion of an adverse claim. *Orsborn v. Deep Rock Oil Corp.,* 153 Tex. 281, 267 S.W.2d 781 (1954); *Titel v. Garland,* 99 Tex. 201, 87 S.W. 1152 (1905); *Brown v. Bickford,* supra; *Allen v. Sharp,* 233 S.W.2d 485 (Tex.Civ.

App. Fort Worth 1950, writ ref'd); *Houston Oil Co. of Texas v. Stepney,* supra.

In this case there was no direct evidence of repudiation or notice of an adverse claim. On the question of constructive notice, the appellee's evidence was as follows:

The witness John Prothro testified that the Clevelands left the property somewhere around 1920 and that Sallie Turner and her husband moved in shortly thereafter. The Turners improved the house and kept the fence up, put in a window or two, maintained a corn patch and a garden, and Mrs. Turner had water and lights connected in her name when they first became available in the neighborhood in about 1936. He stated that for the last 30 or 40 years the property had been known as the Sallie Turner place but that neither Sallie nor Henry Turner had ever told him they were claiming the land as their own and he did not know if they did claim it. Colonel Price testified that Sallie Turner was his aunt and that he visited her frequently during the time she lived on the property and he lived in Chicago. He stated that she set out a tree and put a gate at the place; that she had a little garden and made a few repairs. He did not know how she came into possession of the land and she did not tell him, but she did tell him "I have got a home here" and that, after her husband died she told him "If you see a nice fellow, tell him I have got a home and everything here and I would like to have a husband." Thomas Cleveland, the appellant, was called as an adverse witness. He testified that he visited Sallie Turner frequently when she lived in the house and while he was living out of state; that he understood that she paid some taxes on it (although there was no direct testimony or other evidence to that effect); and that he first found out that appellee claimed the property in 1963 or 1964 after Mrs. Turner had died in 1962. He further testified that he visited Mrs. Turner frequently while she lived in the place and that she never said anything about claiming the land.

The appellant's evidence on the question was as follows: Nathaniel Harris testified

that he knew Sallie Turner well for a number of years and actually stayed with her in the house for four or five years; that she told him the place belonged to Lee Cleveland but "she was just only living there—that she had a home living there as long as she lived." He testified she told him several times that she didn't own the place, "just living there, keep it up you know, live there as long as she lived." He never heard the land called or referred to as the Sallie Turner place. Bessie Lee Hawkins testified that she lived across the street from Mrs. Turner and visited with her often; that Mrs. Turner told her she had a home there as long as she lived, but that it belonged to Mr. Cleveland. She said she had a home there as long as she "kept it up" and she would often tell the witness how pleased she was to have a place to stay. Mrs. Osby Locust testified that she lives right in front of the property in question and has lived there for forty or fifty years; that she had numerous conversations with Mrs. Sallie Turner and that Mrs. Turner told her that she didn't own the land, that Lee Cleveland owned it and "she taken the place to see after it for him while he was away from home and he died and then his wife died so it fell to T.C." An objection was made to the last statement on the ground it was a statement of law. The trial court sustained the objection and instructed the jury not to consider the last statement of the witness. There followed the following testimony:

"Q Did she ever tell you that she was or was not claiming the land?

A She wasn't claiming it.

Q And who did she say was—it did belong to?

A It belonged to T.C.'s uncle, Lee Cleveland.

Q Did she ever tell you why she was living there or how she was living there?

A Sure.

Q And what did she tell you?"

An objection was then made and sustained.

"Q She did tell you that Cleveland owned the land?

A Sure, and that is who owned it."

On cross-examination by plaintiff's counsel, the following testimony was elicited from Mrs. Locust:

"Q Now, Mrs. Locust, you have indicated that Lee Cleveland owned it?

A His uncle.

Q And Lee Cleveland, was he the one that was living there and moved away?

A Yes, got Sallie Turner to move there and take care of the place.

Q And did she take care of the place?

A Sure did."

No objection was made to the foregoing testimony.

■ We have concluded that Mrs. Turner's long continued possession and the circumstances surrounding such possession constitute some evidence that she repudiated her tenancy, but a review of all the evidence in the record compels the conclusion that the jury's finding of such repudiation is contrary to the great weight and preponderance of the evidence. All of Mrs. Turner's acts relating to the land were consistent with, rather than repugnant to, a continuation of the landlord-tenant relationship under which she initially took possession. See *Killough v. Hinds,* supra. From its external manifestations, her possession could properly be considered by the owners to be pursuant to their agreement and not adverse to their title. *Orsborn v. Deep Rock Oil Corp.,* supra. When these facts are considered together with appellant's specific evidence that Mrs. Turner continued to recognize the Clevelands' title and claimed only the right to live in the house for the rest of her life, a finding that she repudiated the landlord-tenant agreement and claimed the title adversely to them appears to be so against the great weight and preponderance of the evidence as to be clearly wrong. Appellant's point that the evidence is insufficient to support such a finding must therefore be sustained. Calvert, No Evidence and Insufficient Evidence, 38 Texas L.Rev. 366 (1960). The evidence is likewise insufficient to support

the jury's answers to Special Issues Nos. 4 and 5 relating to the notoriety of Mrs. Turner's possession and the presumed knowledge on the part of the owners that an adverse claim was being asserted.

 Appellant's seventh point complains of the trial court's exclusion of a portion of Mrs. Locust's testimony. The excluded testimony, elicited by appellant on his bill of exceptions, was as follows:

"Q  Mrs. Locust, would you tell us what Sallie Turner told you that the agreement between her and—

A  And Lee?

Q  Yes.

A  She was there taking care of the place for him.

Q  All right. Did she tell you anything else she was supposed to do?

A  Nothing but just—she said she was staying there taking care of the place, they got her to take care of the place and see after the things they left in the house.

Q  And did she tell you that she was not claiming the place?

A  She didn't claim it."

The trial court excluded the evidence upon objection that it was an attempt to show the contents or terms of a written agreement which would be in violation of the best evidence rule or the parol evidence rule.

The excluded testimony was admissible and should have been allowed, not to show the terms of an alleged written agreement, but to reveal and explain the nature and character of Mrs. Turner's possession. Declarations of an occupant which cast light upon the question of his possessory intent are admissible as verbal parts of his act of occupancy. *Sanders v. Worthington,* 382 S.W.2d 910 (Tex.1964); *Southern Pine Lumber Company v. Hart,* 161 Tex. 357, 340 S.W.2d 775 (1960); *Warren v. Fredericks,* 83 Tex. 380, 18 S.W. 750 (1892); *Thompson v. Moor,* 14 S.W.2d 803 (Tex.Comm.App. 1929, judgment adopted); *Jackson v. Peters,* 251 S.W.2d 544 (Tex.Civ.App. Fort Worth 1952, no writ); *Jansen v. Kelley,* 206

S.W.2d 856 (Tex.Civ.App. Austin 1947, writ ref'd n. r. e.); *Nerio v. Christen,* 189 S.W. 1038 (Tex.Civ.App. San Antonio 1916, no writ); 1 McCormick & Ray, Texas Evidence, Sec. 797 (2d ed. 1956).

Points of error 2, 4, 5 and 7 are sustained. All other points are overruled. The judgment of the trial court is reversed and the cause is remanded for a new trial.