**Drewsilla RADFORD, Appellant,**

v.

**Alejandro R. GARZA, Appellee.**

**No. 1369.**

Court of Civil Appeals of Texas, Corpus Christi.

Aug. 30, 1979.

Rehearing Denied Sept. 21, 1979.

Pat Morris, Nicolas & Morris, Corpus Christi, for appellant.

Homero M. Lopez, Brownsville, for appellee.

## OPINION

YOUNG, Justice.

The primary issue to be decided in this appeal on a suit in trespass to try title is whether the trial court erred in impliedly finding that appellant, Drewsilla Radford, the defendant in possession of the subject property, and her predecessor in possession, Juanita Medina, did not convey sufficient notice to the owner of record, appellee, Alejandro R. Garza, to notify him that their tenancy relationship herein was being repudiated and adverse possession begun. We affirm.

Appellee Garza brought this trespass to try title suit against appellant, Drewsilla Radford, claiming ownership under a prior deed. Radford answered claiming ownership by adverse possession under Tex.Rev. Civ.Ann. art. 5507, 5509, 5510, 5519 (1958). Trial was to the court without a jury. Judgment was rendered in Garza's favor and Radford appeals.

The record fairly presents the following facts and circumstances. The property in dispute is lot 10, block 6, Bella Vista Third Addition of the City of Brownsville, Cameron County, Texas. At some time in 1944 Garza agreed to purchase the subject lot from Enrique Valentine and began making time payments for its purchase. Garza, a skilled carpenter, then started building a house on this lot but was forced to build in stages because lumber was being rationed during the war. Also about this time a friend of Garza's, Juanita Medina, was widowed and she asked him if she could live in his house since she knew that he would soon be leaving Brownsville for extended employment in Orange County, Texas. Garza consented, and gave her permission to either live in the house or store her furniture since apparently from time to time she would live with other families in the Brownsville area while providing domestic services. Garza did not give her permission to rent the house, and Medina did not agree to pay rent, taxes or any other expenses. Garza, though, did ask Medina to take the lot in her name upon completion of payments since by then he would be out of town. It was intended that at a later time Medina would transfer the property over to Garza.

On March 19, 1944, Enrique Valentine transferred the property to Medina by warranty deed. On March 23, 1946, Medina

deeded the property to Garza. Medina continued to live on the property with Garza's consent until 1955.

Meanwhile, on February 26, 1953, Garza returned briefly to Brownsville, recorded the March 23, 1946 deed, and then again left Brownsville for his employment in Orange County.

On January 26, 1956, Medina filed a trespass to try title suit against Garza for possession and title to the subject property. Garza was never served in the suit and it was subsequently dismissed in 1962 for lack of prosecution. Though the docket sheet for this suit indicated that Garza was represented by an attorney, Garza testified that he had never heard of the suit and never hired an attorney to defend it.

Sometime later in 1956, Medina advertised the disputed property for rent by placing on the house a "for rent" cardboard poster. No telephone number or address was indicated on the poster. Daniel Lucio saw this sign and asked one of the neighbors if he knew who owned the property. He was told Medina owned it, and thereafter he rented the house for Sara Gonzalez, who according to Lucio, was his common law wife. Lucio paid the rent on the property but lived in a hotel he managed. Sara Gonzalez lived on the subject property until 1968.

Previously, on July 24, 1963, a suit on a paving lien was filed against the subject property. Garza and Medina were named as defendants. This suit was later dismissed and there is no indication that Garza ever knew about the suit, was served or became involved in this suit.

At sometime in the early part of March, 1965, Medina executed a warranty deed to her niece, appellant herein, Drewsilla Radford, covering the subject property. This deed was recorded March 18, 1965. As a result of this transfer, Medina asked Lucio to make his rental payments to Radford.

In August of 1968, Lucio and Sara Gonzalez vacated the subject property. Thereafter, in September of 1968, Lupe Rios rented the property from Radford. The evidence indicates that Rios continued to reside there until sometime in February of 1975. Thereafter, Radford's sister stored her furniture in the house for approximately one and a half months.

After his period of storage, the evidence is unclear as to who occupied the property between March of 1975 and June of 1977. The property was apparently rented to a woman named Saldana but there is no indication as to when she entered the property. Radford was even unsure as to who rented the property during this time. Then, sometime around June or July of 1976 Antonio and Maria Chavez rented the property and lived there until the time of trial.

The instant law suit was filed on June 22, 1977. Garza, who was 75 years old at the time of trial, explained the events leading up to the filing of the law suit herein as follows. He stated that between 1953, when he recorded the deed, and when he returned from Orange County sometime between eight and twelve years prior to the filing of this suit, that he did not remember visiting the property even once. After some reflection at trial, however, he testified that he did remember visiting the property once during that period, although he did not remember in which year. He stated that upon this visit he only viewed the property from the street, that there was no indication of people there, that the house looked abandoned, and that it was overgrown with weeds. The evidence as to the second time he visited the house after 1953 is also somewhat conflicting. At one point in the trial he stated that he visited the house the second time some eight to ten years prior to the time of trial. Upon reflection, though, he stated that the second time he visited the house after 1953 was about a year and a half prior to trial. He explained that he entered the house and was then met by a neighbor who stated that he managed the property for the owner and that Garza would have to leave. Garza related that upon this visit into the house it looked abandoned. Garza testified that upon being told that someone else owned the property, he thereafter hired an attorney and brought this action. He also

claimed that he had visited the property several times since his encounter with the neighbor and that it had appeared to be vacant every time he visited it.

There is some indication that Garza's second return to the property after 1953 was after he retired upon reaching age sixty-five. Garza was born in 1902, and thus his return would have been sometime after 1967. After his retirement, the evidence indicates that Garza lived in Matamoras. Garza further testified that since 1944 he had made no improvements or repairs to the house, and that after 1953 he had not paid any taxes until recently when he paid all of the taxes on the house for the years 1969 through 1977.

Appellant brings 15 points of error. Her first 10 points challenge the factual and legal sufficiency of the trial court's findings of fact 6, 10, 13, 14, 16 and 20. Points 11 and 14, in effect, contend the trial court's fact findings that the requirements of Tex. Rev.Civ.Stat.Ann. art. 5509 (1958) (five year statute of limitations) were not met are against the great weight and preponderance of the evidence. She also contends that the elements of Article 5509 were established as a matter of law. Points 12 and 15 make the same contentions as points 11 and 14, but are directed to Article 5510 (ten year statute of limitations). We find no argument or briefing directly related to point 13 that is not addressed in points 11, 12, 14, and 15 and, thus, it will not be treated separately.

■ In evaluating appellant's factual and legal sufficiency points we apply the usual tests. In the trial court, Radford had the burden to prove the statutory requirements by a preponderance of the evidence in order to prevail on her adverse possession claim. *Orsborn v. Deep Rock Oil Corp.,* 153 Tex. 281, 267 S.W.2d 781, 787 (1954), *Rocha v. Campos,* 574 S.W.2d 233, 236 (Tex.Civ.App. —Corpus Christi 1978, no writ). We will consider appellant's points under major contentions hereinafter set out under appropriate headings.

## 1. FIVE YEAR STATUTE OF LIMITATIONS

■ One of the facts that the proponent of adverse possession pursuant to Article 5509 must prove is that for each of the years in the five year period the ad valorem taxes were paid before they become delinquent. *Baker v. Fogle,* 110 Tex. 301, 217 S.W. 141 (1919), *Keels v. Keels,* 427 S.W.2d 913, 917 (Tex.Civ.App.—Tyler 1968, no writ). The trial court's unchallenged finding of fact number 18 states: "The Court finds that Radford did not pay all ad valorem taxes on the property in question for a five year period prior to said taxes becoming delinquent, commencing with the year she received a Deed from Juanita Medina." Radford also admitted at trial that in 1968 she discontinued paying taxes. Therefore, finding no five year period in which Radford paid the taxes prior to their becoming delinquent, we overrule appellant's five year statute of limitations contention.

## 2. TEN YEAR STATUTE OF LIMITATIONS

■ Under the ten year statute, it is incumbent upon a claimant to show affirmatively: 1) possession of the land; 2) cultivation, use or enjoyment thereof; 3) an adverse or hostile claim; 4) an inclusive dominion over the property and appropriation of it for his own use and benefit; 5) for the statutory period. *Ramirez v. Wood,* 577 S.W.2d 278, 287 (Tex.Civ.App.—Corpus Christi 1978, no writ), *Rocha v. Campos,* supra. Particularly relevant to this appeal is element 3 above, that is, the showing of a hostile claim or "claim of right." Compare *Ramirez v. Wood,* supra at 288. We have no finding of fact concerning this element of appellant's case; thus, we must presume that the trial court decided this issue in accordance with its judgment, Rule 299, T.R.C.P., and that appellant did not meet her burden of proving a claim of right.

■ A claim of right must be manifested by declaration or by open or visible act. If there is no verbal assertion of claim to the land brought to the knowledge of the land owner, the adverse possession must be

so open and notorious and manifested by such open or visible act or acts that knowledge on the part of the land owner will be presumed. *Rocha v. Campos,* supra at 237. In short, we are here concerned with whether the owner of the property has received or should be deemed to have received proper notice of the adverse possession. The kind and quantum of notice, though, can be affected by the relationship between the owner and the party adversely possessing the property.

■ It is the undisputed finding of the trial court that Juanita Medina entered the property with Garza's consent. A relationship of landlord and tenant therefore resulted even though Medina was not required to pay any rent. *Houston Oil Co. of Texas v. Moss,* 155 Tex. 157, 284 S.W.2d 131 (1955), *Cleveland v. Hensley,* 548 S.W.2d 473, 475 (Tex.Civ.App.—Texarkana 1977, no writ).

■ The law exacts from a tenant the utmost faith in carrying out his agreement of tenancy. *Cleveland v. Hensley,* supra at 475. The landlord is normally justified in assuming that the tenant's use of the premises is permissive and in recognition of the landlord's title. *Tex-Wis Company v. Johnson,* 534 S.W.2d 895 (Tex.Sup.1976). Once the landlord-tenant relationship is established, possession by the tenant will not be considered adverse to the owner as required by Articles 5510 and 5515 unless and until (1) there is a repudiation of the relationship and the assertion of a claim of right adverse to the owner, and (2) notice of such repudiation and adverse claim is given to the owner. *Cleveland v. Hensley,* supra at 475–76; *Killough v. Hinds,* 161 Tex. 178, 338 S.W.2d 707, 710–11 (1960). If the rule were otherwise, it would be extremely hazardous for an owner to enter into any landlord-tenant relationship. *Udell v. Peak,* 70 Tex. 547, 7 S.W. 786 (1888).

■ There is sufficient proof in the record to indicate that from the time Medina began renting the property in 1956 until eight to ten years prior to this law suit, Garza received no *actual* notice that Medina

was holding the land adversely to his ownership. Actual notice of repudiation, however, is not required. Under certain circumstances, notice may be inferred. Generally, it may be inferred in two different situations. First, it may be inferred where the tenant's acts become inconsistent with the original use of the property sufficiently to put the owner on notice that the tenancy has been repudiated. *Tex-Wis Company v. Johnson,* supra at 901. Secondly, it may be inferred where there has been (1) long continued possession under claim of ownership and (2) non-assertion of claim by the true owner. *Tex-Wis Company v. Johnson,* supra at 901, *Cleveland v. Hensley,* supra at 476.

Appellant argues that Garza received constructive notice of repudiation of the tenancy relationship in any one of four ways; namely, change of use, Radford's recording the deed from Medina, long continued possession without assertion of ownership rights by Garza and Garza's receipt of notice from a neighbor that someone else was asserting ownership rights to the subject property.

■ In deciding whether constructive notice was given herein, we look only to potential notice-giving acts during the period of time prior to the latest ten year period when Medina's or Radford's possession might satisfy all of the other requirements for adverse possession. In our case, since the suit was brought on June 22, 1977, we must look to the period prior to June 22, 1967, to determine whether the landlord was sufficiently notified of the adverse possession of this property. The Supreme Court has called this period the "crucial time" when considering an assertion of long continued possession. *Tex-Wis Company v. Johnson,* supra at 901.

## A. CHANGE OF USE

■ Constructive notice of repudiation of the landlord-tenant relationship by change of use must be unmistakable, clearly visible and openly notorious. In *Killough v. Hinds,* supra, 338 S.W.2d at 711, the court stated that acts which would normally justi-

fy a finding of adverse possession under the statutes are generally insufficient to show a repudiation of tenancy by acts of unequivocal notoriety. See *Tex-Wis Company v. Johnson,* supra at 900. The manifestation must be so notorious that it is not susceptible of explanation consistent with the existence of the landlord-tenant relationship. See *Todd v. Bruner,* 365 S.W.2d 155, 160 (Tex.Sup.1963). *Todd* involved adverse possession by cotenants; however, we will note cases concerning adverse possession against both cotenants and landlords because the law concerning the degree of notice necessary to adversely possess is the same in a cotenant case as it is in a landlord and tenant situation. *Todd v. Bruner,* supra at 161.

The facts in this case concerning change of use and its notoriety are sparse. At some time in 1956 Medina placed a "for rent" sign on the property. There is no indication in the record, however, as to how long the sign remained visible to the public or just how visible it was. The other indication of change of use was Sara Gonzalez's moving onto the property and living there. It should be noted, though, that Sara Gonzalez was using the property in the manner for which Garza intended its use; i. e., using it as a residence. The only notoriety intrinsic to her occupation of the property, then, concerns *who* was living there rather than the manner of use.

We note further that Garza possibly visited the property at some time between 1953 and when he returned from Orange County after his retirement. He stated that he viewed the property from the street and saw that it was overgrown with weeds and looked deserted. Though it is possible that he viewed the property after Medina abandoned it and prior to her renting it to Lucio and Gonzalez, it is also possible that he visited it during the same time Gonzalez occupied the house and that it did appear to be vacant.

■ The mere fact that person other than the original tenant were occupying the residence does not require a conclusion that the use of the property had changed sufficiently to serve as notice of repudiation of the tenancy relationship. And, since Garza testified that the place appeared abandoned during his first visit to the property, there was even less reason for him to suspect a change in use.

■ Taking all of this evidence into consideration we find that the court's implied conclusion that this purported change of use was susceptible of an explanation consistent with Medina's intended tenancy is not against the great weight and preponderance of the evidence so as to be manifestly unjust.

**B. RECORDING THE RADFORD DEED**

■ Appellant also contends that her recording of the deed from Medina on March 18, 1965, constituted constructive notice of her adverse possession as a matter of law. Appellant cites *Williams v. Pure Oil Co.,* 49 S.W.2d 846 (Tex.Civ.App.—Dallas 1932), aff'd, 124 Tex. 341, 78 S.W.2d 929 (1935, opinion adopted). In *Williams* the court impliedly expressed its approval of the rule that a conveyance by one cotenant to a stranger or by one or more cotenants to another cotenant, purporting to convey the entire common property, when followed by actual adverse possession, amounts to a disseizin of the non-participating cotenant; and record of such conveyance, followed by possession, constitutes notice of the repudiation. *Republic Production Co. v. Lee,* 132 Tex. 254, 121 S.W.2d 973, 978 (1938, opinion adopted). We find the rule as expressed in *Republic* above to be inapplicable to this case, though. In *Rau v. Christy,* 383 S.W.2d 957 (Tex.Civ.App.—Waco 1964, no writ), a tenant who received from his cotenant lessor a conveyance of both his lessor's interest and the other cotenant's interest, and who apparently recorded the deed, contended as in *Republic* and *Williams* above that this constituted constructive notice of repudiation and that the time for adverse possession had begun to run. The court held *Republic* was inapplicable because the tenant had been previously leasing the property, and that simply recording the deed was not sufficient to apprise the owner cotenant

that such an adverse right was being asserted. Also, in *Keels v. Keels,* supra, the court expressed the opinion that merely recording a deed to a claimant who entered into possession as a permissive user is no evidence of an adverse holding. See also *Udell v. Peak,* supra.

Radford, though, was not a permissive tenant at the time of the deed, but rather a stranger as discussed in *Republic.* However, *Republic* did not hold that the mere recording of a deed, even by a stranger to the property is sufficient. It also required that the new claimant take actual adverse possession of the property following the recording of the deed, the policy being that the party whose property is being adversely possessed has a right to be put on notice that he should check the deed records. In accord with this holding, the Court in *Dickens v. Dickens,* 241 S.W.2d 658, 665 (Tex. Civ.App.—El Paso 1951, writ ref'd n. r. e.), citing the court in *Emporia Lumber Company v. Tucker,* 103 Tex. 547, 131 S.W. 408, 409 (1910), explained that the mere recording of a deed of an attempted sale by a tenant to a third person is not sufficient by itself to put the owner on notice of repudiation. There must be sufficient overt, open and notorious acts other than the mere recording of the deed, sufficient to notify the owner that an adverse claim is currently being asserted against his property. As stated earlier, the record is barren of any evidence concerning the occupancy of Sara Gonzalez other than that she lived on the property and reared four children.

We hold that at most a fact issue is presented here as to whether the occupancy of Gonzalez was sufficiently notorious to apprise Garza that he should be suspicious and inspect the deed records concerning his property. We must presume the trial court found insufficient notice on this point and we cannot say that the court's conclusion is so against the great weight and preponderance of the evidence as to be manifestly unjust.

continued possession is nothing more than circumstantial evidence of the existence of certain facts which tends to support a reasonable inference that the record owner has notice that the tenancy has been repudiated. It should be here noted that this is only an inference and not a presumption. See 23 Tex.Jur.2d, Evidence § 65 (1961). The conclusion that notice has occurred, which conclusion could be supported by the inference, may be either accepted or rejected by the finder of fact. 23 Tex.Jur.2d, Evidence § 67 (1961). And, where a fact to be inferred is controverted by direct testimony, the finder of fact may accept or reject the inference. *Stooksberry v. Swann,* 85 Tex. 563, 22 S.W. 963, 965 (1893). Even if we were to assume, arguendo, that the two elements of long continued possession were established; namely, long continued possession under claim of ownership and non-assertion of claim by the title holder, we would not be compelled to conclude that the possession constituted notice of a repudiated tenancy. Especially is this so where there is direct evidence which contradicts the inference. For example, Mr. Garza testified that he was consistently out of town, and from time to time out of the state, from 1953 until some time after his retirement. He stated that he returned only once to Brownsville during that entire period of time. Furthermore, there is some evidence of a trusting relationship between Garza and Medina around the year 1953 and it would not be unreasonable for the court to expect that trusting relationship to continue in Garza's mind. Compare *Fowler v. Hardee,* 16 S.W.2d 154, 158 (Tex.Civ.App.— Austin 1929, no writ), *Udell v. Peak,* supra. The trial court impliedly rejected the inference that because of long continued possession Garza had notice of repudiation, and we think in light of the direct evidence in contravention to the inference that the trial court's implied finding is not so against the great weight and preponderance of the evidence as to be manifestly unjust.

### C. LONG CONTINUED POSSESSION

According to *Tex-Wis Company v. Johnson,* supra at 901, the idea of long

### D. NOTICE BY A NEIGHBOR

There is some indication that Garza may have received notice of repudiation

from a neighbor to the property as early as ten years before trial. The evidence is conflicting, however, in this regard and again we must presume the trial court found this notice was less than ten years prior to the filing of this suit.

Finding no error in the trial court's implied finding that appellant failed to establish the third element (claim of right) of her case regarding the ten year statute of limitations, we have an independent ground upon which to affirm the judgment of the trial court. Therefore any other error asserted by the appellant here would be harmless. Compare *B. R. D. v. State,* 575 S.W.2d 126, 133 (Tex.Civ.App.—Corpus Christi, 1978, writ ref'd n. r. e.).

The judgment of the trial court is affirmed.

NYE, C. J., not participating.