**J. TREVINO, d/b/a Academy Surplus No. 5, Appellant,**

v.

**CENTRAL FREIGHT LINES, INC., Appellee.**

No. 6261.

Court of Civil Appeals of Texas, Waco.

Feb. 26, 1981.

Tim Rudolph, Piperi & Roberts, Killeen, for appellant.

Robert J. Hanley, Sheehy, Lovelace & Mayfield, Waco, for appellee.

HALL, Justice.

This suit was filed on November 30, 1977, by plaintiff-appellee Central Freight Lines, Inc., against defendant-appellant J. Trevino, "d/b/a Academy Surplus No. 5." Plaintiff alleged that it is a common motor carrier and that it also operates a salvage store

selling merchandise to the public at its Waco, Texas, location; that on or about September 28, 1976, it sold to defendant Trevino certain merchandise and accepted from defendant's agent, Billy Brooks, a check in the sum of $989.50; that the sale and plaintiff's acceptance of Brooks's check were based upon written authorization provided by defendant to Brooks which authorized Brooks to make purchases on behalf of defendant; that the check was not honored; that plaintiff's repeated demands upon defendant for payment for the merchandise have been refused, resulting in plaintiff's damage in the amount of $989.50; and that by reason of defendant's wrongful failure and refusal to pay for the merchandise it was necessary for plaintiff to employ legal counsel, and plaintiff is therefore entitled to recover a reasonable attorney's fee in the amount of $450.00. Plaintiff prayed for its damages and attorney's fees.

Defendant answered with a general denial filed on January 3, 1978.

In July, 1979, plaintiff served a request for admissions upon defendant's attorney which recited that it was made "pursuant to Rule 169 of the Texas Rules of Civil Procedure." The request expressly provided that "each of the matters of which an admission is requested shall be deemed admitted unless within a period of eleven (11) days following date of delivery hereof J. Trevino, Defendant delivers or causes to be delivered to the undersigned attorney a sworn statement either denying specifically the matters of which an admission is requested or setting forth in detail the reasons why he cannot truthfully either admit or deny these matters." The requested admissions were these:

"1. The attached exhibit 'A' is a genuine copy of a letter presented to Central Freight Lines, Inc., on September 28, 1976, by or on behalf of J. TREVINO, Defendant herein.

"2. The original of the attached exhibit 'A' is written on stationery of Academy Surplus.

"3. The original of the attached exhibit 'A' is written on paper on which the Academy Surplus logo is printed along with the address and phone number of Academy Surplus No. 5 store.

"4. J. TREVINO personally wrote the following on the original of the attached exhibit 'A':

'Dear Jerry

Please Let Bill Brooks Purchase Any Merchandise He Wishes For Us Here At Academy Surplus. My Tax Exempt # IS—1–74–1707803–1

Thanks'

"5. J. TREVINO personally signed the original of the attached exhibit 'A'.

"6. J. TREVINO has never, personally, or through any agent, servant or employee withdrawn, amended or contradicted the statement quoted in request for admission number four.

"7. J. TREVINO is the sole owner of Academy Surplus No. 5.

"8. J. TREVINO is the manager and operator of Academy Surplus No. 5.

"9. On September 28, 1976, Bill Brooks purchased each item listed in the attached exhibit 'B' from Central Freight Lines, Inc.

"10. On September 28, 1976, Bill Brooks agreed to pay the prices listed in the attached exhibit 'B' for each item listed in the attached exhibit 'B'.

"11. The items listed in the attached exhibit 'B' were delivered into the custody of Bill Brooks by Central Freight Lines, Inc.

"12. Prior to the delivery referred to in request for admission number eleven, the items listed in the attached exhibit 'B' were owned by Central Freight Lines, Inc.

"13. The total purchase price of the items listed in the attached exhibit 'B' was $989.50.

"14. Bill Brooks delivered a check to Central Freight Lines, Inc. to pay the purchase price referred to in request for admission number thirteen.

"15. The attached exhibit 'C' is a genuine copy of the check referred to in request for admission number fourteen.

"16. The check referred to in request for admission number fourteen was not paid due to insufficient funds.

"17. Bill Brooks paid Central Freight Lines, Inc. $50.00 towards the check referred to in request for admission number fourteen.

"18. Other than the $50.00 payment referred to in request for admission number seventeen, no payment has been made on the purchase price of $989.50."

It is undisputed that defendant did not respond to plaintiff's request for admissions.

On January 7, 1980, plaintiff filed its amended original petition. It restated the allegations in its original petition, and then added a count for prejudgment interest.

On March 27, 1980, defendant filed his first motion for continuance to avoid a trial setting for March 31, 1980. The motion recited that plaintiff had agreed to the continuance.

On April 17, 1980, on defendant's motion, the original firm of attorneys who represented him were permitted to withdraw, and a new attorney was substituted as attorney of record for defendant.

On May 6, 1980, judgment by default was rendered in favor of plaintiff against defendant for $939.50 plus $450.00 attorney's fees. On May 20, 1980, defendant filed a motion for new trial on the ground that he had not received notice of the May 6th setting. On June 3, 1980, the motion was granted, and the default judgment was set aside.

On June 3, 1980, defendant filed, under oath, his first amended original answer. In addition to a general denial, defendant pleaded that at the time of the "alleged execution" by defendant of the written authorization relied upon by plaintiff, defendant was vice-president of Killeen Surplus, Inc., "and any acts alleged by Plaintiff to have been committed by Defendant in the execution of said instrument would have been done on behalf of Killeen Surplus, Inc., and not on behalf of Defendant individually"; that defendant did not, either orally or in writing, authorize the purchase of merchandise upon which this suit is based; and that he did not authorize anyone to make the purchase for him or for Killeen Surplus, Inc.

The case was called for trial on June 23, 1980. On that day, immediately prior to the trial, defendant filed a motion for extension of time for filing answers to plaintiff's request for admissions. Defendant alleged that in July, 1979, he furnished his attorney handwritten answers to the requested admissions; that he relied upon the attorney to answer the request; that he "did not know until now" the request was not answered; that his failure to answer was not the result of conscious indifference or disregard; that his amended original answer set forth his position, and, therefore, the granting of the extension of time would not operate as a surprise to plaintiff; that the request for admissions was "overly broad" and in contravention of Rule 169, in that it inquired into all elements of plaintiff's case, and also included matters outside defendant's personal knowledge; and that if all of the requested admissions should be deemed admitted because of defendant's failure to answer, then "Defendant would be required to stand mute at his own trial."

Defendant's motion for extension of time to answer the request for admissions was heard first by the court. Defendant's testimony in support of the motion established without contradiction that he was called to his attorney's office and apprised of the request for admissions soon after the request was served in July, 1979; that he learned and realized that the requests would be deemed admitted if, within eleven days after service, the responses called for in the request were not made by him; that he furnished his attorney information for answering the request; and that he relied upon his attorney to file the necessary answers.

After the hearing, the court denied the motion and adjudged that all eighteen matters of which admissions were requested by plaintiff were "deemed admitted." The case was then tried on its merits without a jury.

On the merits, plaintiff rested upon the introduction of its request for admissions and evidence supporting its plea for attorney's fees. Defendant then attempted to testify that he was not the sole owner of Academy Surplus No. 5, and was not doing business as Academy Surplus No. 5, in September, 1976, the time in question in this case. Plaintiff objected to this testimony on the ground that it contradicted the request for admissions, specifically requested admissions seven and eight. The objection was sustained. Defendant then sought and received permission of the court "to make a Bill of Exception as to what we would like to prove regarding the sole ownership of the store." Defendant testified on the Bill that on September 28, 1976, Academy Surplus No. 5 was owned by Killeen Surplus, Inc.; that at that time he was a stockholder in Killeen Surplus, Inc., and was manager of Academy Surplus No. 5; that as manager of Academy Surplus No. 5, he was "authorized to act, to purchase, to sell, to run the store on behalf of the corporation"; that he was one of the original incorporators of Killeen Surplus, in 1972; and that in August, 1979, he sold all of his interest in Killeen Surplus.

After defendant perfected his bill of exception, judgment was rendered that plaintiff recover from defendant $939.50 plus $450.00 attorney's fees, and costs.

Defendant brought this appeal on two points of error, asserting the court erred (1) in overruling his motion for extension of time for answering the request for admissions, and (2) in granting plaintiff's motion to deem the requested admissions admitted. We overrule these contentions.

Rule 169, Vernon's Tex.Rules Civ.Proc., provides in pertinent part as follows:

"Each of the matters of which an admission is requested shall be deemed admitted unless, within a period designated in the request, not less than ten days after delivery thereof or within such further time as the court may allow on motion and notice, the party to whom the request is directed, delivers or causes to be delivered to the party requesting the admission or his attorney of record a sworn statement either denying specifically the matters of which an admission is requested or setting forth in detail the reasons why he cannot truthfully either admit or deny those matters."

Defendant's uncontradicted testimony established that his failure to timely answer the request for admissions was due solely to the neglect of his attorney. Under the agency relationship of attorney and client, the neglect of the attorney is attributable to the client. *Texas Employers Insurance Ass'n v. Wermske*, 162 Tex. 540, 349 S.W.2d 90, 95 (1961). In the light of this rule, and the facts, the trial court did not abuse its discretion in overruling defendant's motion for extension of time to answer the request for admissions.

Under his second point, defendant contends the court erred in deeming admitted requested admissions nine through eighteen. He asserts that these requests dealt with facts not known to him, and which plaintiff would have the burden of proving at the trial. He cites several decisions [1] in which it is stated that the purpose of Rule 169 "is to simplify the trial by eliminating matters that really are not in controversy" and that the Rule "was not intended to be used as a demand upon a plaintiff or defendant to admit that he had no cause of action or ground of defense." Defendant then argues that requested admissions nine through eighteen violated Rule 169 because they "cast upon defendant the burden of admitting or denying matters which (a) were in controversy and (b) were not known to defendant nor readily ascertainable to him." We overrule these contentions.

We have no quarrel with defendant's cases and the rules they announce, but all of those cases are distinguishable from our case on material facts; and they are not controlling, here. We perceive no benefit

---

1. *Sanders v. Harder*, 148 Tex. 593, 227 S.W.2d 206 (1950); *Texas General Indem. Co. v. Lee*, 570 S.W.2d 231 (Tex.Civ.App.—Eastland 1978, writ ref'd n. r. e.); *Guerra v. Pena*, 406 S.W.2d 769 (Tex.Civ.App.—San Antonio 1966, no writ).

to be served by an extended discussion of them.

The "obvious purpose" of Rule 169 "is to expedite trials and to relieve parties of the cost of proving facts which will not be disputed on trial, the truth of which can be ascertained by reasonable inquiry." *Masten v. Masten*, 165 S.W.2d 225, 227 (Tex. Civ.App.—Fort Worth 1942, writ ref'd). In our case, if defendant did not have personal knowledge of the matters in question, he should have ascertained their accuracy if that could have been done without cost or considerable burden. If that could not have been done, then defendant should have filed a sworn statement setting forth in detail why he could not truthfully admit or deny without assuming a costly and unreasonable burden. Defendant did not do this. Therefore, the trial court did not abuse its discretion in deeming the requests admitted. *Fireman's Fund Ins. Co. v. Commercial Stand. Ins. Co.*, (Tex.1973) 490 S.W.2d 818, 825; *Masten v. Masten, supra.*

The judgment is affirmed.