NATURAL GAS PIPELINE
COMPANY OF AMERICA,
et al., Appellants,

v.

Joseph H. POOL, et al., Appellees.

No. 07–99–0428–CV.

Court of Appeals of Texas,
Amarillo.

Oct. 12, 2000.

Rehearing Overruled Nov. 21, 2000.

Clements, O'Neill, Pierce, Nickens & Wilson, Jesse R. Pierce, Houston, Bruce M. Kramer, Lubbock, Hinkle, Kensley, Shanor & Martin, Maston C. Courtney, Amarillo, Edward H. Hill, Amarillo, Haynes and Boone, Alan Wright, Dallas, for appellant.

Lovell, Lovell & Newsom, Joe L. Lovell, Amarillo, Lovell & Lyle, James R. Lovell, Dumas, for appellee.

Before BOYD, C.J., and QUINN and JOHNSON, JJ.

JOHN T. BOYD, Chief Justice.

This appeal arises from a dispute between parties to two oil and gas leases in which the lessors claim that the leases have terminated due to a cessation in production. In the appeal, appellants Natural Gas Pipeline Company of America (NGPL), MidCon Gas Services Corp. (MidCon), and Chesapeake Panhandle Limited Partnership (Chesapeake) challenge a judgment in favor of appellees[1] declaring that the subject oil and gas leases terminated pursuant to the terms of the habendum clause of the leases, and awarding damages plus attorney's fees and sanctions.

In eight points, appellants claim that the trial court erred in (1) disregarding the jury's findings of adverse possession; (2) disregarding the jury's finding that appellants' failure to produce gas was excused by laches; (3) granting summary judgment that the leases terminated because of cessation of production; (4) awarding damages for the four-year period preceding the filing of the lawsuit; (5) awarding attorney's fees; (6) awarding to appellees ownership of appellants' well and lease equipment; (7) not awarding a credit to appellants for the amount of good faith improvements and expenses; and (8) awarding sanctions against appellants for failing to admit that appellees owned a specified mineral interest. Although appellees have designated several of their issues as "cross points," they appear to be inextricably linked as alternative issues to their "reply points," and we will discuss

them at the time we discuss the reply points. For the reasons set forth below, we modify the judgment and, as modified, affirm it.

On January 15, 1926, J.T. Sneed, Jr. and wife Zella Sneed executed an oil and gas lease in favor of Marland Oil Company covering, among other lands, Section 25, Block 1, J. Poitevent, Grantee, Moore County, Texas. The lease was to remain in force "for a term of ten years from this date, and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee." By subsequent assignment, the lease was transferred to Texoma Natural Gas Company.

On June 16, 1936, J.T. Sneed, Jr. and Elizabeth Sneed Pool, each individually and as independent executor of the estate of Zella Sneed, deceased, executed a gas mining lease to Texoma Natural Gas Company covering the southwest and northeast quarters of Section 25, Block 1, J. Poitevent, Original Grantee, Moore County, Texas. The lease was to remain in force "so long as natural gas is produced from any portion of said Section 25 under this contract, or under the terms and provisions of the consolidation agreement covering the land hereinabove described, as well as the Southeast ¼ and Northwest ¼ of said section."[2] The consolidation agreement, dated the same date and between the same parties, consolidated the two leases for the purpose of gas production, with the leases to continue in force "so long as natural gas is produced from any portion of said land, either under the well heretofore drilled as aforesaid, or from other wells." Appellants are successors-in-interest to Texoma

1. Appellees are Joseph H. Pool, individually and as Co–Executor of the Estate of Elizabeth Sneed Pool Robinett, deceased; Pamela E. Barnes, Co–Executor of the Estate of Elizabeth Sneed Pool Robinett, deceased; Dorothy Ann Kinney, Co Executor of the Estate of Elizabeth Sneed Pool Robinett, deceased; Joseph Tyre Sneed, III; Patricia Lomax; Anne Lomax Vicars; Delaware Royalty Company, Inc.; Donald O. Hildebrand and Susan D. Bass, Conservators of Cara Sneed Pyle; H.M. Sneed, III; Phillip Thompson, Trustee of the

Georgie E. Thompson Grandchildren Trust; Vernon Denson, Guardian of Lillian Bond Denson; Arthur Talk; Sandra Rose, Individually and as Independent Executrix of the Estate of Georgie Beal Rose, deceased; the Susan S. Wilson Trust # 4100–01; and the Lynn A. Wilson Trust # 4100–02.

2. Both leases will be referred to hereinafter as the Sneed Leases.

Natural Gas Company under the Sneed Leases.

The Sneed J.T. # 1 well was the first gas well drilled on the Sneed Leases. There is apparently no dispute that the original production was obtained in a timely manner. A replacement well, the J.T. Sneed # 1R, was completed in 1994. On May 11, 1998, successors-in-interest to the lessors of the Sneed Leases filed this lawsuit, alleging that the wells on the Sneed Leases ceased to produce during various time periods: August 1941, June—September 1963, July—August 1964, June 1979, March 1983, July 1984, and February—July 1997.[3] They sought a decree that the Sneed Leases terminated automatically by their own terms as well as seeking damages for conversion. In addition to denying the allegations and asserting various counterclaims, appellees also asserted affirmative defenses of statute of limitations, title by adverse possession, ratification, revivor, estoppel, quasi estoppel, laches, and waiver.

In a Partial Summary Judgment dated February 16, 1999, the trial court determined that the Sneed Leases "have lapsed and ended pursuant to the terms of their respective habendum clause due to one or more cessations of production from said land." The case subsequently went to trial on the remaining issues, including appellants' affirmative defenses. The jury returned a verdict finding that appellants acted in good faith in producing gas after August 1964, appellants did not produce gas after August 1964 as a result of fraud, appellants' failure to produce gas was excused, and appellants acquired title by adverse possession following termination of the lease, and that the lease was not revived. The jury also awarded attorney's fees to appellees. The trial court found the evidence was not sufficient to sustain the jury verdict with respect to the questions submitted as to whether the failure

to produce was excused and the acquisition of title by adverse possession. Accordingly, it rendered judgment for appellees notwithstanding the jury verdict on those issues.

In their first issue, appellants claim that the trial court erred in disregarding the jury's findings on adverse possession. They argue that if the Sneed Leases terminated, appellants acquired title by adverse possession under the three-year statute, the five-year statute, the ten-year statute and both twenty-five year statutes. See Tex. Civ. Prac. & Rem.Code Ann. §§ 16.024–16.028 (Vernon 1986 & Supp. 2000). In its verdict, the jury found that appellants had acquired title under all five statutes.

In response, appellees assert that the trial court acted correctly in rendering its judgment because there was no evidence or insufficient evidence of any intent to adversely possess, commencement of hostile or inconsistent possession, continuation of hostile or inconsistent possession, repudiation of the permissive possession given by the lessors, or change of use or character of the possession. Alternatively, appellees claim that if there was sufficient evidence to support the submission of those issues to the jury, the instructions and definitions to each of those questions were improper in that they were confusing, misleading, and constituted a comment on the weight of the evidence.

In order to uphold a trial court's judgment notwithstanding the verdict, the court must determine that there is no evidence to support the jury's finding. *Mancorp, Inc. v. Culpepper,* 802 S.W.2d 226, 227 (Tex.1990). In deciding that question, only evidence that supports the jury's findings may be considered, and all contrary evidence and inferences are ignored. *Leitch v. Hornsby,* 935 S.W.2d 114, 118 (Tex.1996). However, if more than a scin-

---

**3.** The complaint was subsequently amended to exclude the time periods in 1997 and to assert a claim for trespass. Claims for breach of the implied covenants of the leases were dropped.

tilla of evidence supports the jury finding, it must be upheld. *Mancorp, Inc.,* 802 S.W.2d at 228.

The evidence is undisputed that appellants or their predecessors have possessed the Sneed Leases since at least 1936 and produced and marketed gas from them. There was testimony that appellants have paid the ad valorem taxes on the ⅞ working interest, maintained signs on the Sneed Leases, filed reports with respect to the leases, and sent employees to the property. Appellants conducted activities in accordance with the Sneed Leases as if they were in full force and effect. The evidence is also undisputed that appellees never gave any indication to appellants that they considered the Sneed Leases to have terminated until the filing of this lawsuit in 1998.

■ Section 16.021 of the Texas Civil Practice and Remedies Code defines adverse possession as "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." Tex. Civ. Prac. & Rem.Code Ann. § 16.021 (Vernon 1986). Since the original possession of the property by appellants was not only permissive, but also consistent with appellees' concurrent interest in the property, adverse possession cannot be established unless notice of the hostile nature of the possession or repudiation of appellees' title is clearly manifested. *Killough v. Hinds,* 161 Tex. 178, 338 S.W.2d 707, 711 (1960); *Wright v. Wallace,* 700 S.W.2d 269, 271 (Tex.App.—Corpus Christi 1985, writ ref'd. n.r.e.); *Hunt Oil Co. v. Moore,* 656 S.W.2d 634, 641 (Tex.App.—Tyler 1983, writ ref'd n.r.e.). While appellants claim that recordation of an assignment from NGPL to MidCon, notice of recompletion of a new well, and MidCon's act of sending a new division order to appellees constituted notice of appellants' claim to the leases, these actions were also consistent with permissive possession of the property and do not

provide any actual repudiation of appellees' interest.

■ Under the law, an oil and gas lessor has no duty to notify the lessee that the lease has terminated prior to filing suit. *See Watson v. Rochmill,* 137 Tex. 565, 155 S.W.2d 783, 785 (1941). When the provisions of the habendum clause are not met, the lease reverts without the necessity of re-entry, declaration of forfeiture, or legal action. *Kincaid v. Gulf Oil Corp.,* 675 S.W.2d 250, 255 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.). In fact, appellants should have had all the information available to them that was necessary to determine whether the leases had terminated at the time the cessations occurred.

■ Appellants argue that if they became trespassers upon termination of the lease, their possession of the property after that time could not have been permissive, and they therefore met the requirements of possessing adversely. Entering a property without consent is not necessarily the same as claiming ownership of the property by that entry. While appellants may have become trespassers upon termination of the lease, that fact does not abrogate the additional requirement of notice of repudiation of appellees' title so as to establish adverse possession of the mineral interest in the property. In *Hunt Oil Co.,* in which the plaintiff sued Hunt Oil Company seeking to have a lease declared terminated, the court said:

> Upon execution of the Hamilton Hunt lease on May 15, 1961, Hunt acquired constructive possession of the leasehold estate in Hamilton's one-tenth mineral interest. Such possession being in recognition of Hamilton's title, Hunt could not make it a hostile holding without a repudiation of Hamilton's title, evidenced by acts or declarations clearly manifesting such intention. There is no indication in the record that Hunt intended to repudiate their recognition of Hamilton's title until after this suit was filed.

*Hunt Oil Co.,* 656 S.W.2d at 641 (*citing Killough v. Hinds, supra, and Thompson v. Richardson,* 221 S.W. 952, 953 (Tex.Com.App.1920, judgment approved)). These words are similarly applicable to the case before us.

Appellants cite to us the case of *Tex-Wis Co. v. Johnson,* 534 S.W.2d 895 (Tex. 1976), to support their proposition that long-continued possession under a claim of ownership and non-assertion of a claim by the titleholder are facts from which notice of repudiation may be inferred. However, the holding in that case requires that the adverse possession be inconsistent with the existence of title in any others. *Id.* at 899; *see also Thedford v. Union Oil Co. of California,* 3 S.W.3d 609, 612 (Tex.App.—Dallas 1999, pet. denied). As we have stated, no act of appellants has been shown to be inconsistent with the rights and interests to which each party was entitled had the lease remained in effect through continuous production. Thus, there was nothing to put appellees on notice that appellants were claiming to own an interest adverse to appellees.

Because we find nothing in the record that evidences the repudiation of appellees' ownership of the mineral interest, we find no error in the trial court granting judgment notwithstanding the verdict on this issue. Thus, there is no need for us to address appellees' claims of errors in the jury instructions. Appellants' first issue is overruled.

Appellants claim in their second issue that the trial court erred in disregarding the jury's finding that appellants' failure to produce gas was excused by laches. To prove laches, it must be shown that there was an unreasonable delay in asserting a legal or equitable right and a good faith change of position by another to his detriment because of the delay. *Rogers v. Ricane Enterprises, Inc.,* 772 S.W.2d 76, 80 (Tex.1989); *City of Fort Worth v. Johnson,* 388 S.W.2d 400, 403 (Tex.1964); *Campbell v. Pirtle,* 790 S.W.2d 372, 375 (Tex.App.—Amarillo 1990, no writ). If the delay impairs the defendant's ability to defend against the claim or ascertain the true facts, then the claim should be barred for laches. *De Benavides v. Warren,* 674 S.W.2d 353, 362 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.); *see also Altech Controls Corp. v. E.I.L. Instruments, Inc.,* 33 F.Supp.2d 546, 553 (S.D.Tex.1998).

An oil or gas lease may be kept alive after the primary term only by production in paying quantities or a savings clause, such as a shut-in royalty clause, continuous operations clause, drilling operations clause, etc. *Hydrocarbon Management, Inc. v. Tracker Exploration, Inc.,* 861 S.W.2d 427, 431 (Tex.App.—Amarillo 1993, no writ); *Shown v. Getty Oil Co.,* 645 S.W.2d 555, 559 (Tex.App.—San Antonio 1982, writ ref'd). Here, it is undisputed that there were periods of no gas production from the Sneed Leases as alleged by appellees. It is also undisputed that the leases contained no "savings clauses" such as might prevent termination of the leases upon the cessation of production.

In such situations, a "temporary cessation" clause is implied, which requires that the cessation must be "due to a sudden stoppage of the well or some mechanical breakdown of the equipment used in connection therewith, or the like," and production must be resumed within "a reasonable time." *Watson,* 155 S.W.2d at 784. The burden was upon appellants to prove that the cessation of production fell within that doctrine. *Bradley v. Avery,* 746 S.W.2d 341, 343 (Tex.App.—Austin 1988, no writ). Appellants contend that due to the lapse of somewhere between 14 years (assuming the leases terminated at the most recent cessation in 1984) and 57 years (assuming the leases terminated at the earliest cessation in 1941) since the leases experienced cessations in production, they are unable to locate documents and witnesses to defend against the claims of appellees. Without these resources, appellants say, they were unable to identify the causes of the interruptions in gas pro-

duction and prove that they were temporary cessations.

Conversely, appellees argue that the equitable defense of laches is not available as a matter of law in an action based on a legal right, and that the information available to appellees did not provide them with the reasons for the cessations in production so they had no knowledge that the leases had terminated until immediately prior to filing suit. Appellees further contend that the instructions to the jury with respect to laches contained incorrect statements of law, were incomplete, contained surplusage which was confusing, and constituted a comment on the weight of the evidence.

■ We do not agree that the defense of laches is unavailable as a matter of law in any action based on a legal right, since both the Supreme Court and various Courts of Appeal have found otherwise. *City of Fort Worth,* 388 S.W.2d at 403; *Preston Tower Condominium Assn. v. S.B.Realty, Inc.,* 685 S.W.2d 98, 104 (Tex. App.—Dallas 1985, no writ); *Smith v. Smith,* 681 S.W.2d 793, 796 (Tex.App.—Houston [14th Dist.]1984, no writ); *De Benavides,* 674 S.W.2d at 362. However, it has been held by the Supreme Court that "[l]aches is not a defense in a trespass to try title suit where the plaintiff's right is based on legal title." *Rogers v. Ricane,* 772 S.W.2d at 80; *see also Smoot v. Woods,* 363 S.W.2d 798, 802 (Tex.Civ. App.—Fort Worth 1962, writ ref'd n.r.e.).

In *Rogers,* the assignors of a portion of an oil and gas lease brought a trespass to try title action to recover possession of a working interest in the lease. The *Rogers* decision was issued after the opinion of the San Antonio Court of Appeals in *De Benavides,* which is cited to us by appellants as support for their argument that laches is a viable defense to these claims. We further note that the San Antonio Court of Appeals has more recently concluded that "laches is not a defense to a claim of title." *Eland Energy, Inc. v. Rowden Oil & Gas, Inc.,* 914 S.W.2d 179, 188 (Tex.App.—San Antonio 1995, writ denied). The *Eland* case also involved a suit for declaratory judgment to clear title to an oil and gas lease. Thus, we conclude that it is now established that laches is not a viable defense in a case where the plaintiff's right is based upon legal title. We therefore find no error in the trial court having granted judgment notwithstanding the verdict of the jury on this issue, and overrule appellants' second issue. Because we have overruled this issue, there is no need for us to discuss appellees' claims of errors in the jury instructions.

■ In their third issue, appellants complain that the trial court erred in granting summary judgment that the Sneed Leases had terminated due to a cessation of production. Appellees moved for partial summary judgment under Texas Rule of Civil Procedure 166a (a) and (i). To be entitled to summary judgment, the moving party must show that there is no genuine issue of material fact as to the essential elements of the cause of action. *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970); *Abraham Inv. Co. v. Payne Ranch, Inc.,* 968 S.W.2d 518, 523 (Tex.App.—Amarillo 1998, pet. denied). To attack a "no evidence" summary judgment motion, the non-movant must show that he produced more than a scintilla of probative evidence to raise a fact issue on the material questions presented. *Kimber v. Sideris,* 8 S.W.3d 672, 675–76 (Tex. App.—Amarillo 1999, no pet.). A "no-evidence" summary judgment motion may be made only with respect to claims on which the adverse party would have the burden of proof. Tex.R.Civ.P. 166a(i).

To establish the lack of production during the referenced periods, appellees attached certified copies of Texas Railroad Commission production records for the well on the Sneed Leases to their motion for partial summary judgment. The records covered alleged cessations only for the time periods of June—September 1963, July—August 1964, June 1979,

March 1983 and July 1984. Appellees also attached copies of the Sneed Leases and the Consolidation Agreement.

 Appellants rely upon the argument that it is appellees' burden to show that there were no producing wells on the Sneed Leases other than the J.T. # 1 well during these time periods, and that they failed to do so. Only genuine issues of material fact preclude summary judgment. *Sasser v. Dantex Oil & Gas, Inc.*, 906 S.W.2d 599, 604 (Tex.App.—San Antonio 1995, writ denied). Where the summary judgment evidence raises no more than a surmise or suspicion of a fact issue, no genuine issue of material fact exists to defeat summary judgment. *Booth v. Cathey*, 893 S.W.2d 715, 719 (Tex.App.—Texarkana), *rev'd in part on other grounds*, 900 S.W.2d 339 (Tex.1995). A fact is established as a matter of law if ordinary minds cannot differ as to the conclusion to be drawn from the evidence. *See Triton Oil & Gas Corp. v. Marine Contractors and Supply, Inc.*, 644 S.W.2d 443, 446 (Tex. 1982); *Ellert v. Lutz*, 930 S.W.2d 152, 155 (Tex.App.—Dallas 1996, no writ). Summary judgment should not be granted when the cause of action depends on proof of facts not ordinarily subject to absolute verification or denial, *e.g.*, intent, reliance, reasonable care or uncertainty. *Villacana v. Campbell*, 929 S.W.2d 69, 73 (Tex. App.—Corpus Christi 1996, writ denied).

 It is also true that a summary judgment motion must stand on its own merits, and the non-movant has no burden to respond to the motion. *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222–23 (Tex. 1999). However, appellants did file a response to this motion. In the affidavit of Bobby Montgomery, an operations manager for NGPL, he states that "one or more of the wells on the lease sought to be terminated have been continually produced

without interruption since July 1984." If there had been another well on the lease producing gas during the critical periods of time for which production records were not provided by appellees, that fact should have been easily controvertible by Montgomery through records of NGPL or the Railroad Commission. We do not believe that reasonable minds would differ as to the conclusion to be drawn from the evidence that was before the court, *i.e.*, that there was only one producing well on the lease during the time periods for which cessations of production were established.[4]

Appellants also rely on the argument that appellees must show that there was no production in paying quantities, and in order to do so, must prove that production did not yield a profit after deducting operating and marketing costs and that a prudent operator would continue to operate the well for a profit and not speculation. *See Pshigoda v. Texaco, Inc.*, 703 S.W.2d 416, 418 (Tex.App.—Amarillo 1986, writ ref'd n.r.e.). However, appellees' evidence established that there was no production at all from the J.T. Sneed # 1 well during certain periods of time. As stated above, once appellees proved there was a cessation of production and no applicable savings clause, the burden was upon appellants to raise a material fact issue that there was continuous production or any cessations of production were temporary. No analysis of whether production was in paying quantities need be reached when the evidence establishes no production at all. *Bachler v. Rosenthal*, 798 S.W.2d 646, 650 (Tex.App.—Austin 1990, writ denied).

Appellants attempted to supplement their summary judgment evidence with the affidavit of Jerald B. Post, who was Area Superintendent of Gas Measurement for NGPL from August 1958 through March 1986.[5] He stated that the only reasons

---

4. We also note that appellants state in their recitation of facts in their appellate brief that the J.T. Sneed # 1 well was drilled in 1936 and a replacement well, the J.T. Sneed # 1R, was drilled in 1994. They do not assert that

any other wells ever existed on the Sneed Leases.

5. The record does not show that the trial court granted appellants' motion for leave to

why production from a well in the West Panhandle Field may not have been reported to the Railroad Commission during that time period were for workovers, routine maintenance, because of an order of the Railroad Commission relating to overproduction, gathering system problems, and excessive line pressure. He also offered the conclusory statement that no well that was either shut in or unable to produce was ignored by NGPL, but that NGPL attempted at the first opportunity to restore production and diligently continued its efforts until production was restored. Here, it is undisputed that there is no savings clause in the Sneed Leases to prevent termination. For a cessation to be temporary, not only must it be due to some mechanical breakdown or something similar, but production must resume within a reasonable time. What constitutes a reasonable time depends on the facts presented. *See Watson,* 155 S.W.2d at 784; *Cobb v. Natural Gas Pipeline Co. of America,* 897 F.2d 1307, 1309 (5th Cir.1990).

Assuming arguendo, that the summary judgment proof presented by appellants is sufficient to establish that the reason for the stoppage of production had to be a mechanical breakdown or something similar, no specific facts were offered by appellants with respect to the well on the Sneed Leases to show, based on the particular problem encountered in that well and the efforts employed by appellants to solve that problem, that production was restored within a reasonable time. Since there was no evidence before the court on this issue, we do not believe appellants met their burden to show that there was a genuine fact issue, and the trial court did not err in granting summary judgment with respect to termination of the leases. While some of appellants' summary judgment proof was devoted to their affirmative defenses, the trial court did not preclude appellants

from asserting those defenses at trial. We overrule appellants' third issue.

In their fourth issue, appellants claim that the trial court improperly awarded damages for the four-year period preceding the filing of this lawsuit. Appellants assert that a two-year statute of limitations applies to actions for trespass and conversion. Appellees do not disagree and respond they in fact sought and were awarded damages only for the two years preceding the filing of the lawsuit. The lawsuit was filed on May 11, 1998. The record contains a stipulation signed by counsel for both parties which states that "this stipulation was the basis for the damage award in the judgment in this cause." The stipulation contains gas volumes and price per month commencing January 1996 from the Sneed # 1–R well, and indicates a total amount for the ⅞ working interest in gas. The stipulation also contains a calculation for transportation charges since April 1998. The total damages awarded by the trial court in its modified final judgment equals the amount received for gas for the ⅞ interest as shown on the stipulation plus the calculated transportation cost. That judgment further recites that damages were rendered based upon the stipulation received from the parties. Therefore, it does not appear that damages were awarded for the four years preceding the filing of the lawsuit. Appellants' fourth issue is overruled.

In their fifth issue, appellants claim that the judgment improperly awarded attorney's fees to appellees. Appellants contend that appellees are not entitled to attorney's fees under Tex.Civ. Prac. & Rem.Code Ann. § 38.001 (Vernon 1997) because that statute does not authorize the recovery of attorney's fees for actions for trespass or conversion, which were the issues submitted to the jury. Appellants also state that attorney's fees

supplement the evidence in opposition to the motion for partial summary judgment, although the trial court's order granting partial summary judgment refers to the court having

considered the motion for leave to supplement. We will assume for purposes of our discussion that this evidence was considered by the trial court.

are not recoverable under the declaratory judgment statute, Tex.Civ.Prac. & Rem. Code Ann. § 37.009 (Vernon 1997) because, although couched in terms of a declaratory judgment action, the lawsuit was in effect "an action for the removal of a cloud on title to real property." Additionally, appellants contend that even if this was a declaratory judgment action, there was no segregation of attorney's fees between claims for allowed fees and those which are not recoverable.

■ In their second amended original petition, appellees sought a declaratory judgment declaring that the Sneed Leases had expired as well as asserted claims for trespass and conversion. Appellants counterclaimed in their answer for a declaratory judgment that the leases had not terminated due to a lack of production. A trespass to try title suit is "the method of determining title to lands, tenements, or other real property." Tex.Prop.Code Ann. § 22.001 (Vernon 1984). The purpose of the Uniform Declaratory Judgments Act is to "settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and it is to be liberally construed and administered." Tex.Civ.Prac. & Rem. Code Ann. § 37.002 (Vernon 1997). When the construction or validity of deeds or other documents of title is not involved, the suit is not one for declaratory judgment. *McRae Exploration & Production, Inc. v. Reserve Petroleum Co.*, 962 S.W.2d 676, 685 (Tex.App.—Waco 1998, no pet.).

■ A trial court's award or denial of attorney's fees in a declaratory judgment action should not be reversed absent a clear abuse of discretion. *Oake v. Collin County*, 692 S.W.2d 454, 455 (Tex.1985). However, it has been held that it is error to award attorney's fees under the declaratory judgment act when the action is essentially one of trespass to try title. *McRae Exploration & Production, Inc.*, 962 S.W.2d at 685; *Ely v. Briley*, 959 S.W.2d 723, 727 (Tex.App.—Austin 1998, no pet.); *Barfield v. Holland*, 844 S.W.2d 759, 771 (Tex.App.—Tyler 1992, writ denied); *Kennesaw Life & Accident Ins. Co. v. Goss*, 694 S.W.2d 115, 118 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.).

■ A suit to declare a mineral lease terminated by its own terms upon cessation of production of oil or gas and to recover title and possession is not a suit for cancellation, though its effect is the same. *Johnson v. Montgomery*, 31 S.W.2d 160, 165 (Tex.Civ.App.—Amarillo 1930, writ ref'd). Although the leasehold estate is a determinable fee which returns spontaneously to the grantor upon cessation of production, if re-entry is required, a suit in trespass to try title constitutes re-entry and is an appropriate action to recover possession. *Dennis v. Royal Petroleum Corporation*, 326 S.W.2d 538, 543 (Tex.Civ. App.—Texarkana 1959), *rev'd on other grounds*, 160 Tex. 392, 332 S.W.2d 313 (1960).

The construction of the Sneed Leases is not at issue in this particular case. The terms of the leases provide that the leases shall continue so long as there is production. Under the law, if production ceases and that cessation is not temporary, the leases automatically terminate and revert to appellants, *i.e.*, the leases were valid but may have terminated by their own terms. Whether there has been a complete cessation of production and whether that cessation was temporary are evidentiary issues that do not rely upon construction of the leases. Appellees have argued vigorously in reply to appellants' second issue that, as a matter of law, laches cannot be an affirmative defense to prevent a lease from lapsing by its own limitation, and "[a]n action to determine that a determinable fee has lapsed and reverted is a legal action in trespass." We have agreed with appellees on this issue and will now consistently apply our determination to the award of attorney's fees. Therefore, we find that this case was essentially an action for trespass to try title and not for declaratory judgment, and attorney's fees should

not have been awarded under the declaratory judgment act.

However, appellees contend alternatively that even if this case was essentially a trespass to try title suit, they are entitled to attorney's fees because appellants raised adverse possession as a defense. In fact, appellants asserted a counterclaim for adverse possession of the minerals. Section 16.034(a) of the Texas Civil Practice and Remedies Code provides that in "a suit for the possession of real property between a person claiming under record title to the property and one claiming by adverse possession, if the prevailing party recovers possession of the property from a person unlawfully in actual possession, the court may award costs and reasonable attorney's fees to the prevailing party." Tex. Civ. Prac. & Rem.Code Ann. § 16.034(a) (Vernon 1986). However, to recover attorney's fees under this statute, "the person seeking possession must give the person unlawfully in possession a written demand for that person to vacate the premises." Tex. Civ. Prac. & Rem.Code Ann. § 16.034(b) (Vernon 1986). That demand must be given by registered or certified mail at least ten days before filing the claim for recovery of possession. *Id.*

■ It has been held that in a trespass to try title suit, where the defendant claims ownership by adverse possession, an award of attorney's fees to the prevailing party is authorized. *Terrill v. Tuckness*, 985 S.W.2d 97, 111 (Tex.App.—San Antonio 1998, no pet.); *City of Carrollton v. Duncan*, 742 S.W.2d 70, 79 (Tex.App.—Fort Worth 1987, no writ). There is no contention on appeal of a lack of compliance with subsection (b) of the statute. Thus, for these reasons, the trial court had discretion to award attorney's fees under this statute based on appellants' counterclaim.

■ However, appellants claim that even if attorney's fees are recoverable, there was no evidence produced of the amount of fees attributable to the actions for which attorney's fees may be recovered and those for which they may not. In other words, they claim, appellees had the duty to segregate the amount of attorney's fees attributable to each individual claim. However, appellants only objected to the submission of the jury questions regarding attorney's fees on the basis that there was no evidence to support the submission. They did not object that the question as phrased permitted the jury to award attorney's fees *en toto* rather than allocating the fees to each claim. Thus, appellants therefore waived their right to object on appeal. *Home Sav. Ass'n v. Guerra*, 733 S.W.2d 134, 137 (Tex.1987); *Matthews v. Candlewood Builders, Inc.*, 685 S.W.2d 649, 650 (Tex.1985). Issue five is overruled.

Appellants claim by their sixth issue that the judgment improperly awarded the well and lease equipment to appellees. Appellees agree with this contention and state that this court "should, therefore, reform the judgment to delete its order that Plaintiffs are the owners of the 'casing, wellhead equipment, meterhouses, and all other equipment attached to the three existing gas wells on the subject property.'" Appellants' sixth issue is sustained, and the trial court's judgment modified accordingly.

■ In their seventh issue, appellants claim they are entitled to a credit against damages for the good faith improvements and expenditures on the Sneed Leases. Appellants assert that the jury found them to be good faith trespassers on the Sneed Leases and, under Texas law, a good faith trespasser is liable to the owner only for the value of the minerals, less the drilling and operating costs. Appellees admit appellants are entitled to a credit against damages for the costs of gathering, compression and treating, which are set out in Defendant's Exhibit No. 20, and agree that the modified final judgment should be reduced by $161,750.80. Appellees do not agree that appellants are entitled to a credit for the lease expenses and overhead.

In response to Question 1, the jury found appellants acted in good faith in producing gas from Section 25 after August of 1964. Question No. 14 submitted to the jury read as follows:

What sum of money, if any, should be awarded to Defendants for the following:

Consider the following elements and none other. Do not include an amount for one element in your answer to another element.

Answer in dollars and cents, if any, for the following:

C. The necessary cost to Defendants, if any, for the gathering, compression and transportation costs of the wells from and including January 1, 1996 to the present.

ANSWER: $ 0

D. The good faith improvements and operating costs, if any, made by Defendants from and including January 1, 1996, to the present.

ANSWER: $ 0

Appellees argue that these findings are supported by evidence that appellants recovered over two million dollars after the Sneed Leases terminated, and also all costs associated with the recompletion of the Sneed # 1R well in 1994 within six months.

■■■ In our discussion of appellants' first issue, we have set forth the standard of review in disregarding a jury finding. However, we believe that the law is clear that the measure of damages for a good faith oil and gas trespass is the value of minerals at the surface, less the costs of mining, extracting and hoisting the minerals to the surface. *Bender v. Brooks,* 103 Tex. 329, 127 S.W. 168, 170–71 (1910); *Hunt v. HNG Oil Co.,* 791 S.W.2d 191, 193 (Tex.App.—Corpus Christi 1990, writ denied); *Mayfield v. de Benavides,* 693 S.W.2d 500, 506 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.).

Randy Gobin, assistant controller for operations accounting for Chesapeake, testified that Defendant's Exhibit No. 20 reflects the costs of producing gas from the well for 1996–1999. Appellees have already conceded for purposes of this appeal that appellants are entitled to the costs shown on that exhibit for gathering, treating, and compression. Based on the authorities cited, we believe appellants are also entitled to an offset for the lease and well expenses for those same years, which are the years for which appellees have recovered damages for conversion of their gas. The amount of those expenses is $115,715.29. Since the J.T. Sneed # 1R replacement well was drilled in 1994, no costs for the drilling of that well are included in those numbers. We sustain appellants' issue seven and modify the trial court's judgment to reduce the amount of the judgment by $277,466.09.

■■■ In appellants' eighth and final issue, they claim that the trial court erred in awarding sanctions against them for failing to admit appellees owned certain specified mineral interests. The sanctions were based on appellants' response to requests for admissions. The amount of sanctions included attorney's fees and expenses for a total of $1,931. In Plaintiffs' Second Set of Requests for Admissions, appellants were asked in 13 separate admissions to admit that each individual appellee owned a specified percentage of the mineral estate of Section 25, Block 1, J. Poitevent Survey, Moore County, Texas. One example is as follows:

*REQUEST FOR ADMISSION NO. 1:* Admit that Joseph H. Pool owns a 25% of the mineral estate of Section 25, Block 1, J. Poitevent Survey, Moore County, Texas.

By their answer filed January 6, 1999, appellants gave the same response to each requested admission, which was as follows:

Defendants admit that they are currently paying royalty interests on the basis of the Division Order attached hereto as Exhibit "A" and admit that they have no basis to contest the accuracy of the percentage of ownership reflected thereon.

Except as admitted, Defendants have made no present-day title opinion sufficient to allow them to either admit or deny this Request.

The division order attached to the responses was dated March 28, 1998. Appellees contend that by appellants' refusal to admit to these facts, appellees were forced "to incur time and expense to prove what was, in reality, a[n] undisputed formality." Further, the title documents were introduced into evidence without objection by appellants. Rule 215.4(b) of the Texas Rules of Civil Procedure provides:

(b) *Expenses on Failure to Admit.* If a party fails to admit the genuineness of any document or the truth of any matter as requested under Rule 198 and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, he may apply to the court for an order requiring the other party to pay him the reasonable expenses incurred in making that proof, including reasonable attorneys fees. The court shall make the order unless it finds that (1) the request was held objectionable pursuant to Rule 193, or (2) the admission sought was of no substantial importance, or (3) the party failing to admit had a reasonable ground to believe that he might prevail on the matter, or (4) there was other good reason for the failure to admit.

Tex.R. Civ. P. 215.4(b).

Appellants contend that the requests for admission were improper because they called for an admission as to a legal issue that, given the nature of the lawsuit, would have been an admission that appellees were entitled to judgment. The test is whether the trial court abused its discretion in awarding sanctions against appellants for failing to admit the ownership interests as set forth by appellees. *Humphreys v. Meadows,* 938 S.W.2d 750, 751 (Tex.App.—Fort Worth 1996, writ denied); *Marshall v. Ryder System, Inc.,* 928 S.W.2d 190, 194 (Tex.App.—Houston [14th Dist.] 1996, writ denied). The primary

purpose of admissions is to simplify trials by eliminating matters about which there is no real controversy, but which may be difficult or expensive to prove. Requests for admissions are not intended to be used as a demand to a party to admit that the party has no cause of action or ground of defense. *Stelly v. Papania,* 927 S.W.2d 620, 622 (Tex.1996); *In re Estate of Herring,* 970 S.W.2d 583, 589 (Tex.App.—Corpus Christi 1998, no pet.).

Appellees asserted by way of this lawsuit that collectively they owned the entire mineral interest in Section 25, not just the royalty interest, due to the termination of the Sneed Leases. Had appellants admitted each of the ownership interests as set forth in the requests for admission, which mineral ownership interests totaled 99.9%, those admissions could have been used to estop appellants from claiming any mineral ownership in Section 25. It was appellees' burden of proof to establish the interest of each appellee in the property during the time period for which damages were sought to the extent that any recovery was to be apportioned to each individual plaintiff. We do not believe that the requests for admission imposed on appellants the burden to incur cost by performing a title search outside of their own records to determine if the ownership percentages set forth in the requests for admission were currently accurate. *See Trevino v. Central Freight Lines, Inc.,* 613 S.W.2d 356, 360 (Tex.Civ.App.—Waco 1981, no writ). Appellants' response to the requests for admission attempted to limit the admissions to the royalty interest only, as opposed to the entire mineral interest, and to the information that was within appellants' possession. For these reasons, we believe that the trial court abused its discretion in imposing sanctions against appellants and modify the judgment accordingly.

In summary, we overrule appellants' first five issues and sustain appellants' sixth, seventh and eighth issues. We therefore modify the judgment of the trial

court to delete its holding that appellees are the owners of the wellbores, casing, wellhead equipment, meterhouses, and all other equipment attached to the existing gas well or wells on the subject property. The judgment is further modified to reduce the total amount of actual damages awarded by $277,466.09 and to delete the award of $1,931 as sanctions for failing to admit ownership. As modified, the judgment is affirmed. *See* Tex.R.App. P. 43.2(b).